WIGGINTON, Chief Judge.
Appellants seeks review of a final decree entered in an adoption proceeding by which the prayer for adoption was denied but the care, custody, control and education of appellant’s minor daughter was awarded to appellees.
There is no essential dispute in the material facts on which the decision must turn. Appellant is the natural father of the minor, Susan Ruth Helen Carrier, whose custody forms the subject of this appeal. Appellant married the child’s mother in 1947, and thereafter established their home in Portland, Oregon, where *194 Susan was born. Marital difficulties arose between the parents which culminated in a final decree of divorce entered by the Circuit Court of Multnomah County, Oregon, on May 16, 1951. By the final decree appellant father was granted a divorce from his wife and awarded the complete custody and control of their minor daughter, Susan, who at that time was approximately two and one-half years old.
On the day prior to the entry of the final divorce decree appellant’s wife, in violation of an order entered in the cause, took the child from a custodial home in which she had been placed by the court pending final disposition of the divorce proceedings and fled the State of Oregon. Within his limited means appellant endeavored through inquiry, correspondence and the aid of law enforcement agencies to learn the whereabouts of his former wife and his daughter, but all efforts in this regard were unsuccessful.
After leaving Oregon appellant’s former wife went to the State of Alabama, where she remained a short while with her parents before moving to Florida. Here she married her present husband and bore him two additional children.
For a period of four years preceding the institution of this proceeding, the mother’s poor condition of health necessitated a series of surgical operations which to a large extent incapacitated her from discharging her normal household duties. During such periods of illness and recuperation, the mother permitted Susan to visit with her neighbors the appellees, who are unrelated to the child either by blood or marriage. Appellees have no children of their own and quite naturally became attached to the child, and her to them. Because of the mother’s continued illness and dim prospects for permanent recovery she consented to the adoption of Susan by appellees.
Appellees instituted this proceeding for the purpose of securing a decree of adoption. An investigation by the State Welfare Board disclosed that the child had a living father, the appellant, who had not consented to the adoption. Upon receiving notice of the suit appellant promptly came to Florida, engaged counsel, filed in the cause his answer objecting to the adoption of his child by appellees, and praying that the child be restored to him as its legal custodian in accordance with the decree of the Oregon court.
From the evidence it affirmatively appears that appellees are fit and proper persons, able to take care of the child and provide for her a suitable home, proper training and education. On the other hand it is undisputed that appellant is an equally fit and proper person in an even better position now to care for and rear his child than he was at the time when the child’s custody was awarded to him by the Oregon court in 1951.
After the special examiner’s report was prepared and filed the chancellor called and examined the child who at the time of trial was nine years old. She stated that she loved and was very happy living with ap-pellees and wished to remain with them. She testified that she did not know her father and did not want to return with him to live in Oregon.
By his final decree the chancellor held that the record fails to justify an order permanently eliminating all legal rights of the father to the child, so the prayer for adoption was denied. The care, custody, control and education of the child was awarded to appellees, preserving to appellant the right of reasonable visitation, provided the exercise of such right does not disturb the child or interfere with the custody awarded appellees.
Appellant contends that by his decree the chancellor failed to accord full faith and credit to the custody decree entered by the Oregon court, and furthermore, abused his discretion in depriving the natural father *195 his child’s custody under the evidence contained in the record.
Jurisdiction of the Oregon Court to award custody of the minor to appellant is unquestioned. The full faith and credit clause of the United States Constitution[1] is, however, applicable only to final as distinguished from temporary or interlocutory orders, judgments or decrees of foreign states.[2] A decree awarding custody of a minor is universally subject to modification from time to time as the interest of the minor may require. It is established in this jurisdiction that judgments and decrees affecting the custody of minors, not being final, occupy a different status from those affecting divorces and property rights, and may be modified as circumstances warrant without doing violence to the full faith and credit requirements of the Federal Constitution.[3]
The custody of the minor involved in this case was fully adjudicated by a court of competent jurisdiction in Oregon. Although the decree entered therein does not require enforcement in Florida under the full faith and credit clause of the Federal Constitution, it is entitled to great weight and respect under the doctrine of comity absent a showing by clear and convincing evidence that such new conditions have arisen since rendition of the decree as would justify a change in custody of the child, or that old facts have come to light which had they been known to the chancellor would have impelled a different conclusion.[4] And the facts and circumstances of such changed conditions must relate to the one to whom custody of the child was awarded,[5] who in this case is appellant.
The record before us is devoid of evidence tending to show that since the entry of the Oregon decree appellant’s circumstances have so changed as to render him incapable of caring for and rearing his child. In fact the evidence shows to the contrary. Nor is there any proof of such misconduct on the part of the appellant as would justify a forfeiture of the custodial rights granted him by the court of original jurisdiction.
It is clearly evident from an examination of the decree under assault that the chancellor’s discretion was largely controlled by the expressed wishes of the child to remain with appellees. Such feeling on the child’s part is a natural reaction motivated by the fact -that appellees have taken good care of her for a number of years and have bestowed on her the kind of loving affection so essential to the welfare and normal development of a young child. We cannot close our eyes, however, to the grave injustice which has been done appellant where through no fault of his own, he and his child have been deprived of the opportunity of living together in a family relationship with the attendant privilege of learning to know and love one .another as father and daughter. In custody proceedings the welfare of the child must, of course, be regarded as the chief consideration. But the inherent right of a parent to enjoy the society and association of his offspring, with reasonable opportunity to impress upon them a father’s or mother’s love and affection in their upbringing, must be regarded as being an equally important, if not controlling consideration in adjusting the right of custody as between a parent and a stranger to the blood. No relation *196 ship in life should be regarded as more sublime, nor should any inherent right of an individual be more highly esteemed, than that which arises out of the natural relationship of love and affection which normally exists between parent and child, regardless of what may be the private individual code or morals, or the race, color, creed or station in life of the parent.[6]
 It has long been the law of this state that a child’s preference is an important factor to be considered in making an award of its custody.[7] Such factor, however, is not controlling. Our Supreme Court in the Marshall case held that the rights of the parents will not be disregarded in order to gratify the mere wishes of a child, when the parent or guardian is a proper person to be entrusted with its custody. The soundness of the quoted rule devolves from human experience which has taught us that choices made and preferences expressed by impressionable children of tender years are the product of immature judgments and are often inconsistent with self interest and that which is right and proper. It was knowledge of this truth which accounted for the success reputedly enjoyed by the Pied Piper of Hamlin.
In the Torres case [8] our Supreme Court, speaking through Mr. Justice Thornal, held that “a natural parent has a right to the custody of his or her children absent conduct or conditions that justify a deprivation of the right in the interest of the welfare of the children. This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of its offspring the evidence relied upon should be clear and convincing.”
In reversing a decree of adoption in favor of strangers to the blood as against the parents of a minor child, the Second District Court of Appeal in an able opinion by Associate Judge Patterson cited the above quoted rule announced by our Supreme Court in the Torres case. In commenting upon that rule the District Court said: “Such a rule is salutary and needful restraint upon the power of governmental authority to inject itself into the natural arrangement of the family and the natural relation of the parent and child. And we think that the interests and welfare of the child are best served by the rule. Certainly adoptions in most cases serve a laudable and beneficial purpose but where there is a choice to be made between a natural and an adopted status the welfare of the child strongly favors the former absent strong and compelling reasons to the contrary. Parents are by no means required to face strangers to their blood on equal terms in contention for the parental rights to their children. The law is solicitous of the welfare of the child, and indeed where they are irreconcilable the welfare of the child will in proper cases be given primacy over the natural rights of the parent. Nevertheless we think that the rule quoted from the Torres case means that except in cases of clear, convincing and compelling reasons to the contrary the child’s welfare is presumed to be best served by care and custody in the natural family relation by its natural parents, and that transitory failures and derelictions of the parents might justify temporary deprivations of custody by appropriate proceedings but seldom the permanent deprivation of parental rights with the finality of an adoption decree.” [9]
*197 It is our conclusion that the rationale of the Roy case applies with equal force to the question of custody involved in the matter now under consideration.
It is further evident from an examination of the decree appealed from that the chancellor gave great weight to the effect it would have on the child in question to take it away from the pleasant surroundings of the home it presently occupies and force it to accompany its father to a distant state and into a home occupied by strangers. In disposing of a similar contention involved in the Roy case, the Second District Court of Appeal stated, “We do not overlook the trial judge’s concern for the effect of removing this child from the adoptive home to which he has over most of his young life become adjusted as his own. Obviously a period of readjustment will be necessary when that occurs; but we think such a readjustment in this case of a five years old child, while unfortunate, is yet a relatively transitory and surmountable problem and that in the long view his best interest will be served by his readjustment into the home of his natural parents and blood brother when his parents can show to the Juvenile Court that they and their home surroundings are ready to receive him.”
The above quoted ruling conforms to our view of the readjustment which can and will be made by the child involved herein when her custody is restored to her natural father.
For the reasons above stated, it is with great reluctance that we hold the chancellor misconceived the principles of law applicable to the facts in this case, and abused his discretion in awarding custody of the child to appellees. The decree appealed from is accordingly reversed with directions that it be vacated and an appropriate decree be entered in accordance with the views expressed herein.
STURGIS and CARROLL, DONALD, JJ., concur.

. Constitution of United States, Art. IV, See. 1.

. Dwyer v. Dwyer, Fla.1954, 72 So.2d 378.

. Dahlke v. Dahlke, Fla.1957, 97 So.2d 16; Little v. Franklin, Fla.1949, 40 So.2d 768; People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133.

. Modacsi v. Taylor, Fla.App.1958, 104 So. 2d 664; Sayward v. Sayward, Fla.1949, 43 So.2d 865; Jones v. Jones, 156 Fla. 524, 23 So.2d 623.

. Willson v. Willson, Fla.1951, 55 So.2d 905.

. Frazier v. Frazier, 109 Fla. 164, 169, 147 So. 464.

. Hamilton v. Rose, Fla.1957, 99 So.2d 234; Grant v. Corbitt, Fla.1957, 95 So. 2d 25; Cone v. Cone, Fla.1953, 62 So. 2d 907; Marshall v. Reams, 32 Fla. 499, 14 So. 95.

. Torres v. Van Eepoel, Fla.1957, 98 So. 2d 735, 737.

. Roy v. Holmes, Fla.App.1959, 111 So.2d 468, 470.