WIGGINTON, Chief Judge
(specially concurring).
By order dated December 7, 1955, the minor involved herein was adjudged by the Juvenile Court of Duval County to be a delinquent child within the purview of Chapter 39, F.S., F.S.A., upon a finding that he was without proper parental care and guardianship due to the conduct of his parents. Custody of the child was temporarily awarded to his paternal uncle and aunt with .visitation privileges granted the parents at all reasonable times and places. Jurisdiction was retained for the entry of such further orders as may be deemed necessary. No appeal from this order was taken so its correctness is conclusively presumed.
By petition filed December 18, 1957, the parents prayed that custody of their child be returned to them. They alleged that they were then properly qualified to discharge their obligations as parents, and were well able to provide a suitable home *83 in which to rear their son consistent with his spiritual welfare. Upon consideration of the evidence adduced, the court entered an order in which it was found that the best interest of the child would be served by continuing for the present his custody in the paternal uncle and aunt. No finding was made nor conclusion reached with respect to the fitness of the parents to have the custody of their son returned to them.
On appeal, the foregoing order was affirmed by this court.[1] In our opinion of affirmance we said: “The word ‘forthwith’ is emphasized because the order appealed contains language clearly indicating that the retention of the child’s custody in the present custodians is in no sense intended to be irrevocable. On the contrary, the finding that such custody shall be continued in them ‘for the present’ opens the door of the court for appellants to apply in due season for an order modifying or setting aside the original order.”
On August 18, 1958, the parents filed a new petition in the Juvenile Court again praying that the custody of their minor son be restored to them. They alleged that they are qualified and capable in all respects to have the custody of their child and to care for his moral and spiritual well-being; that the child’s best interest will be served by restoring him to the family circle so that he may receive the companionship, love and affection of his parents and minor sister.
Testimony on the issues made by the petition was confined to the period of time subsequent to entry of the original custody order on December 7, 1955. Numerous witnesses were called by appellants and each testified in effect that the parents had completely rehabilitated themselves since suffering loss of their child’s custody; that they were respected citizens in the community and well able to discharge their parental obligations in a proper manner.
To like effect was the testimony of each witness, save one, who was called to testify on behalf of the State. One witness, an admittedly close friend of the custodian uncle, related an incident which occurred in the early morning hours of New Year’s Day 1957, in which appellant father overturned his car on a curve of the road while under the influence of alcoholic beverages. Except for this single incident, the record is devoid of any evidence which could support an order refusing to restore custody of this minor child to its parents.
Upon consideration of the record the Juvenile Judge entered an order finding that it is for the best interest of the child that its custody be continued, at least for the time being, with its paternal uncle and aunt. Again the court failed to make any finding or express any conclusion regarding the fitness of the parents to have the custody of their child. It is this order which we now review on appeal.
The record of the proceedings upon which the original custody order of December 7, 1955, was based is not before us. We are, therefore, unable to ascertain if there exists any relationship between appellant father’s excessive indulgence in intoxicants on New Year’s Day 1957, and the lack of parental care and guardianship which prompted the forfeiture of his son’s custody in the original proceedings. It well may be the trial judge considered the New Year’s Day incident indicated that appellant is not yet sufficiently rehabilitated to warrant return to him of his son’s custody. If such was the basis for his order, we cannot hold with certainty that the conclusion reached constituted a misconception of the legal effect of the evidence, or such a departure from the essential requirements of the law as to warrant interference by this court.[2]
Although parents may by their own derelictions forfeit the right to continued cus *84 tody of their offspring, this does not mean that such right is irrevocably lost.[3] Nor does it mean that when the cause for forfeiture has been removed, the parents stand in the position of strangers in contention with the temporary custodian for the return of their child’s custody.[4] By the recent decision of this court in the Carrier case[5] we adopted with approval the rule enunciated by the Second District Court of Appeal in the Roy case,[6] by which it is held that except in cases of clear, convincing and compelling reasons to the contrary, the child’s welfare is presumed to be best served by care and custody in the natural family relation by its natural parents. Especially is this true in cases such as the one now before us where the injection of governmental authority into the natural family arrangement has resulted in the loss of companionship, love and affection between brother and sister. As said by our Supreme Court in the Arons case [7]: “We are of the view that the children in a family should not be separated from each other and distributed around in different homes, except for the most compelling cause. For while brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so. Justice requires that society exercise its moral duty to insure that children in a family enjoy this right until such time as absolute necessity and the welfare of the children, itself, requires their separation.”
Upon any futher proceedings in this cause we have full confidence that the learned trial judge will faithfully observe the principles herein stated and follow them in his consideration of any subsequent order touching this child’s custody.

. Pendarvis v. State, Fla.App.1958, 104 So.2d 651, 652.

. Noeling v. State, Fla.1956, 87 So.2cl 593.

. In Re O. E. S., EIa.App.1958, 106 So.2d 610.

. Roy v. Holmes, Ela.App.1959, 111 So.2d 408.

. Carrier v. Vermeulen, Fla.App.1959, 114 So.2d 192.

. Supra note 4.

. Arons v. Arons, Fla.1957, 94 So.2d 849, 853.