124 So.2d 726 (1960)
In the Interest of Richard Samuel KERSEY, Wanda Sue Kersey, and Katherine Elaine Kersey, Minor Children of Roger Sylvester Kersey and Mildred V. Kersey, his wife, Appellants,
v.
STATE of Florida, Appellee.
No. C-112.
District Court of Appeal of Florida. First District.
December 1, 1960.
Earl Brown and S. Perry Penland, Jacksonville, for appellants.
William A. Hallowes, 3rd, State Atty., Nathan Schevitz, Asst. State Atty., and *727 Lamar Winegeart, Jr., Jacksonville, for appellee.
MASON, Associate Judge.
This is an appeal from an order of the Juvenile Court of Duval County denying the petition of appellants, as natural parents of three minor children, for a return to them of the custody, care and control of the children, of whose custody they had been deprived by a previous order of such Court. The facts as briefly as they may be stated are as follows:
On December 30, 1957, the Juvenile Court of Duval County, after hearing, adjudged appellants to be unfit parents, their five (5) minor children dependent under the law of Florida, and placed the children in a boarding home in Jacksonville, directing the father to pay their board. The record amply supports this first order of the Court. January 6, 1959, upon petition filed alleging that the parents of the children were reconciled and living together in Lexington, North Carolina, that the father was earning One Hundred Thirty-one Dollars and Sixty Cents ($131.60) per week, and that the parents had a comfortable home, well furnished, etc., with good environment for the children, the Juvenile Court determined that the children were still dependent, but ordered that the two older children, age Twelve (12) and Ten (10) years respectively, be committed to their parents, appellants herein, to reside with them in North Carolina, but refused to change the custody of the three younger children, subjects of this appeal. The Court in making this determination of the petition apparently based its decision upon the allegation "that the two oldest children * * * have great attachment for their parents and are extremely unhappy; that, for that reason, and that reason alone, it would appear that said children should be committed to said parents." In November, 1959 the parents again applied to the Court for the return to them of the three remaining children, a hearing was held on December 4, 1959, upon their petition, and the Court determined that the best interests of these three children demanded that the care, custody and control "remain for the present" with the present custodians. In the meantime the two younger girls, Wanda Sue and Katherine Elaine, had been placed in the care of one Mr. Youmans and wife in Duval County in April, 1958, and at the time of the hearing in December, 1959, the Youmans were applying to the Circuit Court for adoption of these two little girls. The young boy, Richard, had been, in February, 1958, placed in the custody of a Mr. and Mrs. James W. McCain, who lived in Jacksonville, Florida. The McCains had not sought to adopt this child by the time of the December, 1959, hearing. The order was entered December 28, 1959. An appeal therefrom was dismissed April 7, 1960, because it was not timely filed. On April 11, 1960, appellants again petitioned the Court for a return of the three younger children and again the petition was denied. In this petition appellants alleged that they had resumed marital relationship September 1, 1958, and moved to Lexington, N.C., and claimed to have lived sober and proper lives ever since, that the father had steady employment with the same employer from which he earned adequate income to support his wife and five children, since September 1, 1958, and that they had a good and proper home in which to rear all their children. The Juvenile Court again denied their petition for the return of the three younger children, on May 5, 1960, on the ground that no material change of circumstances from those disclosed at the December, 1959, hearing had been disclosed, and that the Court was still of the opinion that the actual welfare of the children is the governing factor in such cases. It is from this order that the present appeal emanates.
Appellants raise the question of abuse of discretion by the Juvenile Court in refusing to return custody and control of the three younger children to them.
Our examination of the record disclosed that there was omitted from it when transmitted *728 to this Court, perhaps by oversight of the parties, the petition of December 29, 1958, and the lower court's order thereupon, dated January 6, 1959, by which the Court returned custody of the two older children to appellants, but refused to do so as to the other three, subjects of this appeal. Believing that this petition and order are necessary to be considered by us with other portions of the record for proper disposition of this appeal we have, under Rule 3.6, subd. l, 31 F.S.A., directed that these documents be transmitted to this Court, and we have made them a part of the record on appeal.
At the outset we are confronted with the effect of the order of this Court on April 7, 1960, dismissing the appeal from the Juvenile Court's order of December 28, 1959, which denied the petition of appellants for a return of custody to them of the three children, subjects of the present appeal. The first appeal was dismissed because not timely filed. Appellee contends that the dismissal of April 7, 1960, operated as an affirmance of the judgment or order appealed from, and, since the trial court announced at the hearing held on the petition filed April 11, 1960, that the parties had stipulated that the testimony taken at the hearing upon which the order of December 28, 1959, was predicated "shall become a part of the proceedings in the Court today and that the facts today are substantially the same as they were on December 4, 1959", was res adjudicata as to all matters litigated therein and as to the facts relating to custody prior to the time of said order. Appellee then argues that the only basis upon which the lower court would have been authorized to change custody after December, 1959, would be upon a showing of change of circumstances since that time. We can dispose of this problem, without passing upon the question as to whether the dismissal by this Court of April 7th is an affirmance of the order of December 28, 1959, by concluding, as we do, that the record before us is not limited to the facts and circumstances before the trial judge when he ruled on December 28, 1959. In the first place the trial judge did not determine his order of May 5, 1960, (the order from which this appeal is taken), solely upon the record as it was as of December, 1959, for at the April, 1960, hearing he announced only that the facts then were "substantially the same as they were on December 4, 1959", and he proceeded to take additional testimony to decide whether he would make any change in custody as of then. At the April, 1960, hearing it developed that since the last hearing the appellant parents were continuing to live harmoniously together, that they were purchasing and about to move into a more commodious home for the family, that the two older children whose custody they had since January, 1959, were happily situated with their parents and the parents continued to enjoy a good reputation in the community in North Carolina where they had lived since September, 1958. Furthermore, we do not believe that when the contest is between the right of natural parents to have their children and that of strangers to have their custody, even in a situation where the State is the real party in interest, the same strict rule as to the necessity of a change in circumstances should apply as is applicable under our decisions where the contest is between the natural parents, and one of them seeks to modify an order of the chancery court which has given custody to the other parent. This seems to have been the view of our Supreme Court expressed in State ex rel. Sparks v. Reeves, Fla., 97 So.2d 18, 20, which was a habeas corpus proceeding brought by the father of children against their maternal grandmother to have returned to him the custody of his children which had been awarded to the grandmother by a previous order of the Court. The Supreme Court affirmed the lower court's order denying, in effect, change of custody to the father primarily because the father had not been able to show his ability to care for the children. But the Court *729 speaking through Mr. Justice Thornal, observed,
"In view of the foregoing, the order under attack is affirmed, but without prejudice to the appellant to renew his application for custody of his children at an early date (italics ours) consistent with their welfare. Such welfare is not entirely, though it must be in part, determined simply on a comparative basis. In other words, once the father's ability reaches adequacy, his legal right should not be overcome by the fact that the respondents' offerings may be more adequate than his, or that they may continually out-do him, at least in material matters. At any subsequent hearing the trial Judge shall take into consideration the showing made by the appellant at the hearing held pursuant to the petition filed by him on July 8, 1956, as well as any subsequent facts relevant to the problem. It is the spirit and intent of this opinion that if, since the order of July 20, 1956, the appellant has continued to demonstrate a continuity of the conduct evidenced at the last hearing, then his legal right to his children should be recognized, the equities otherwise being equal." (Italics ours).
We hold that the appellants were not foreclosed by the order of December 28, 1959, or by the order of this Court dismissing as untimely the appeal therefrom, from again petitioning the trial court for a change of custody predicated upon the facts and circumstances as they developed at the hearing in December, 1959, but fortified by the evidence which was before the Court at the hearing in April, 1960, resulting in the order now appealed.
We must, therefore, pass upon the question as to whether the trial court abused its discretion in denying the petition of April 11, 1960. We think it did. In reaching this conclusion we are cognizant of the rule which clothes the trial court's order with the cloak of validity unless otherwise shown to be invalid, and we also are hesitant to overturn the order of an able trial judge who has "lived with" this case for several years, who had opportunity to observe the witnesses before him and to evaluate their testimony, and who by experience and training is certainly better qualified than we to deal with a problem such as confronted him in this case. Yet, in our opinion, the record so overwhelmingly reveals the fitness of these parents on May 5, 1960, to have custody of their natural children and their right to the same, and is so utterly devoid of any extenuating circumstances which would deprive them of that God-given right, that we must conclude that the order denying it was an abuse of judicial discretion.
Appellee confronts us with our decision and opinion in Pendarvis v. State, Fla.App., 104 So.2d 651, wherein we held that in appeals from the orders of Juvenile Courts our review is limited to the determination of whether a lawful order has been entered by the Juvenile Court and that this Court cannot substitute its judgment for that of the Juvenile Court in discretionary matters, and that we may only inquire whether the judge misinterpreted the legal effect of the evidence as a whole or in some other manner departed from the essential requirements of the law. We also held in that case that once a child has been lawfully declared to be a dependent or delinquent child it becomes a ward of the State and a broad discretion is vested in the Juvenile Court to do those things which appear to the Court to be in the best interest of the child. And we stated that evidence that may be totally inadequate to deprive a parent of the custody of his child in the first instance may be altogether adequate to support the Court's refusal to restore custody to the parent once the child has become a ward of the State.
These principles were reaffirmed by us on the second appeal of the Pendarvis case, Fla.App., 115 So.2d 81, and we do not now renounce them nor recede from our holdings in those cases. However, there *730 was evidence in the Pendarvis cases which supported the trial court's rulings. We believe there is none in the present case which would justify a ruling that the parents were fit and proper to have the custody of their two older children but unfit to have the three younger ones at the same time. It is true that custody of the older two was given some sixteen months prior to the last refusal of the Court to return custody of the three younger ones. But, if anything, this fact strengthens the conclusion of the fitness of the parents to have the custody of all their children, for if they conducted themselves in such manner over this period of time to be entitled to keep custody of the two awarded them in January, 1959, certainly, in the absence of evidence justifying different rulings, they were entitled to be awarded custody of the other three children on May 5, 1960, the date of the order under attack here. The evidence in favor of the rehabilitation of appellants since September, 1958, the time of their marital reconciliation and taking up of their North Carolina abode, not only preponderates, but is overwhelming. In fact, there is none to the contrary. Furthermore, not only have the parents been morally rehabilitated but economically so likewise. The evidence is conclusive as to the steady character of employment of the father and the prudence of both parents in providing an adequate home for their family. Neighbors and fellow-churchmen testified as to the good reputation of the parents in the community in which they lived, and as to the love and affection shown by the parents toward each other, and toward the two older children living with them. These two children testified at each of the last two hearings  the December, 1959 hearing and the April, 1960 one  of the love they had for their parents, and that of the parents displayed to them, as well as their desire to have the other three children in the family circle. There is no testimony in the record to contradict the effect of this evidence presented by the appellants upon their fitness over a period of sixteen months, and on May 5, 1960, to care for and rear the three children, subjects of this appeal. We conclude that the record, taken as a whole, clearly establishes the right of the appellants to have their three remaining children restored to them and that the trial Court misinterpreted the legal effect of the evidence. In these cases the primary consideration is the welfare of the children affected, and all other rights, both of natural and foster parents must give way if in conflict. However, where there is no conflict between such welfare of the children and the rights of the natural parents, then the Court should honor such rights and award the children  or return them as in this instance  to such natural parents.
The Court in the exercise of its role of guardian of dependent children should at the same time zealously guard the rights of natural parents. Particularly should it be true in this age of creeping paternalism at all levels of government in this country that individuals may confidently look to the courts to fulfill their historic role of guardians of the rights and liberties of the people, one of which rights is to rear, train, care for, and enjoy the companionship of their children, without the threat of unreasonable interference of governmental authority.
We think the overwhelming weight of the evidence not only sustains the right of the natural parents to have their children, but also that the welfare of the children will best be served by placing them in the home of their parents where they will have not only the love and care of such parents, but also the natural love and companionship of two older sisters. As the Supreme Court said in Arons v. Arons, Fla., 94 So.2d 849, 853:
"We are of the view that the children in a family should not be separated from each other and distributed about in different homes, except for the most compelling cause. For while brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so. Justice requires that *731 society exercise its moral duty to insure that children in a family enjoy this right until such time as absolute necessity and the welfare of the children, itself, require their separation."
That opinion was rendered in a divorce case, but the principle applies with equal force to the situation here. And as Judge Wigginton, in a concurring opinion, in second Pendarvis, Fla.App., 115 So.2d 81, 84, so aptly stated:
"Especially is this true in cases such as the one now before us where the injection of governmental authority into the family arrangement has resulted in the loss of companionship, love and affection between brother and sister."
Here we have a family of five children split three ways, the two eldest living with their natural parents, two of the three remaining in the custody of foster parents who would like to adopt them but cannot because of the retained jurisdiction over them in the Juvenile Court, and the fifth child in still another home with his legal relationship to his foster parents also up in the air because of such retained jurisdiction.
In Carrier v. Vermeulen, Fla.App., 114 So.2d 192, this Court held that except in cases of clear, convincing and compelling reasons to the contrary, the child's welfare is presumed to be best served by care and custody in the natural family relation by its natural parents. That was an adoption case, and the appellee would distinguish it and Van Eepoel v. Justice, Fla., 104 So.2d 586, from the case at bar by pointing to the fact that there attempts were being made to deprive the natural parents permanently of their offspring, while here these children have been made wards of the State by a dependency order of the Court and as such the question of custody is always open and subject to change by the Juvenile Court. We recognize this difference in fact, but the principle announced in those cases is just as applicable here. We feel that when the present fitness of the parents has been so convincingly established, and has continued for such period of time as this record discloses, the time has come for the custody of these children to be settled in their natural parents. In that way both these parents and the foster parents will not have their rights clouded with uncertainty and the children themselves will be enabled to lead natural, normal lives in the family circle of such natural parents.
It is, therefore, the order of this Court that the order of May 5, 1960, of the trial judge be, and it is reversed, with directions that an order be entered in accordance with the views herein expressed.
Reversed.
STURGIS, Acting C.J., and CARROLL, DONALD, K., J., concur.