PER CURIAM.
This is an appeal by Judy Smith, the mother of twin boys, Kelly and Kasey, from an order of the circuit court, juvenile division, permanently committing the twins to the care, custody and control of the ap-pellee, the Division of Family Services, for subsequent adoption.
The twins were taken from Mrs. Smith on June 29, 1972, when they were 22 months old and found wandering naked in the streets. On July 11, 1972 the two children were adjudicated dependent children and placed in the temporary custody of the appellee. On May 10, 1973, the court ordered Mrs. Smith to submit a suitable plan for the care of the twins or face the termination of parental rights for the purpose of adoptive planning. On August 13, 1973, the appellee filed a petition for permanent commitment of Kelly and Kasey Smith and as grounds therefor averred that Mrs. Smith, since the original order of July 11, 1972, adjudicating the twins dependent, had failed to prepare a plan for the support of her children while in the appellee’s custody even though she was employed during that time. Further, the division stated that all relatives of the children had been contacted and were either unwilling or unable to properly care for the children.
On October 19, 1973, a hearing was held before the juvenile judge. A transcript of the testimony of this hearing has been included in the record on appeal, and this court has read the entire transcript.
Following the hearing, the court entered the order which is now appealed. In finding that the twins should be permanently committed, the court tracked two of the statutory grounds found in Fla.Stat. § 39.-11(2) (d), to-wit: the parents had “substantially, continuously and repeatedly refused to give the captioned children parental care and protection; have neglected to give the children financial care; and the parties are unfit by reason of their conduct and condition which is seriously detrimental to the children’s welfare.”
As support for this finding, the court stated the following conclusions based upon her interpretation of the evidence:
“The mother of the captioned children has failed to establish a proper home for herself; has failed to establish a suitable home or plan of care for the captioned children; she has continued her way of life by failing to come home after work, leaving the place where she stays for days at a time, even though she has been employed for the past year she has failed to provide any support or assistance for the captioned children and her other four children; the evidence showed beyond a doubt that she has failed or refused to accept her responsibility as a parent for the captioned children and her other four children. The father of the children stated in open court that he could not provide a home for the children; the evidence showed that he has failed to support either his wife or their children for approximately one and one- *129 half years and that he has failed or refused to accept his parental responsibility for the captioned children.”
We are mindful that upon review of a discretionary order of this nature the scope of review is limited to determining whether the juvenile judge misinterpreted the legal effect of the evidence as a whole or whether the court departed from the essential requirements of the law. Noeling v. State, Fla.1956, 87 So.2d 593; In Re Interest of Camm, Fla.1974, 294 So.2d 318.
Also, we do not think it necessary to cite any authority for the proposition that in consideration of cases such as the one at bar the paramount concern of the court must be the ultimate best interest and welfare of the children.
Yet, it is likewise true that when the state undertakes to permanently deprive the natural parents of the right to rear and enjoy their children, the courts should zealously protect the rights of the natural parents and insure that this drastic action strictly conforms to legislative guidelines. Kersey v. State, Fla.App.1960, 124 So.2d 726; G. S. v. State, Fla.App. 1966, 190 So.2d 603.
We have carefully scrutinized the evidence presented in this case, and have concluded that the evidence, taken as a whole, demonstrates that the court misinterpreted the legal effect thereof.
When Mrs. Smith’s children were discovered wandering in the street, she was asleep at a neighbor’s house. At that particular time, the mother was under great stress. She and her husband were in the process of getting a divorce. The mortgage on her house was being foreclosed, and the electricity and water were being shut off. The roof of the house was leaking, and the toilets did not work properly. During this period, Mrs. Smith’s husband was not supporting her or the children, and to the date of the hearing on October 19, he had not contributed any support.
In addition to the twins, Mrs. Smith has four other children. Through the aid of the Division of Family Services, two of these four children were placed under the care and custody of their maternal grandparents. The other two were placed with their paternal grandparents. Mrs. Smith testified that her children “are my whole world,” indicating that she would eventually like to regain custody of all six children.
At the end of August, 1972, approximately a month and a half after the twins were adjudicated dependent, Mrs. Smith obtained employment. She now earns approximately $110 a week. She also managed to sell the family home, and she received enough money to pay off creditors. At the hearing, the father testified that he hadn’t supported his family because he was depressed and on drugs, but that he now felt his attitude had changed and he could provide support for the twins.
Much of the time after July 11, 1972, Mrs. Smith lived either with her mother or sister, both of whom testified. She at tempted to arrange a plan with each of them whereby she and the twins could live with either the mother or sister. The evidence indicated also that on September 7, 1973, almost a month after the petition for permanent commitment had been filed, a social worker from the Division of Family Services visited Mrs. Smith at her sister’s apartment, where the appellant was then residing. It was indicated by the social worker that if Mrs. Smith’s-living conditions continued to improve, visitation privileges for Mrs. Smith with the twins would start at the sister’s home. The social worker then testified that a couple of weeks later she decided the plan was unworkable.
Mrs. Smith further testified that she was exploring the possibility of obtaining housing through the FHA, and that she intended to pursue her application for housing.
Other testimony in the record concerned Mrs. Smith’s emotional and psychological *130 state. It was generally conceded that Mrs. Smith was a loving mother who cared for the emotional needs of her children. However, the witnesses testified that she kept her former home in a very messy condition and that she did not adequately care for the physical needs of her children.
There was evidence also that Mrs. Smith contributed very little financial support for either the children under the care of the grandparents or the Division, other than some incidental expenditures for groceries and clothing. But, on cross-examination, it was admitted by several witnesses that Mrs. Smith was never specifically requested to make monetary contributions.
Mrs. Smith’s mother and sister both testified that they felt the appellant has a psychological problem and is not capable of adequately caring for her children. This was also the opinion of other witnesses. In fact, Mrs. Smith’s family attempted to arrange counseling for her, but she refused because she felt the psychologist who her family wanted her to see was too close to her family. She also refused counseling when it was suggested by a Division social worker.
However, at the hearing, the appellant testified that she recently had seen a psychiatrist, and it was her intention to continue seeing the psychiatrist.
In addition to this testimony Mrs. Smith admitted that she would leave wherever she was living for several days at a time. But, she maintained that she was worried about her children, and she would leave home to relieve her mind about them.
The appellant further stated that she has two girl friends who might watch the twins while she is away at work should she regain custody of the children.
After a full consideration of the testimony in this case, we are of the opinion that the order of trial court permanently depriving the appellant of her rights to her twin children was too drastic.
We think that the evidence fails to demonstrate Mrs. Smith was so unfit as a mother that she poses a serious detriment to the welfare of the twins. Nor do we think the court’s finding that Mrs. Smith substantially, continuously and repeatedly refused proper parental care to her children was correct in light of the evidence.
At worst, the evidence reflects that the appellant was not a model mother, that during a period of stress, she was not entirely attentive to the needs of the children, and that presently she does have emotional difficulties requiring professional counseling.
But on the other hand, the evidence shows that the appellant was endeavoring to devise a plan for the proper care of the twins; she was willing to see a psychiatrist ; and she loved the children and wanted them back.
Therefore, for the reasons stated and upon the authority cited, the order appealed is reversed and the cause is remanded for further proceedings not inconsistent with this decision.
Reversed and remanded.