523 So.2d 1164 (1988)
Shirley FREDRICK, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. 87-172.
District Court of Appeal of Florida, Fifth District.
March 3, 1988.
Rehearing Denied April 27, 1988.
Jay Paul Cohen of Dvorak & Cohen, P.A., Orlando, for appellant.
James A. Sawyer, Jr., Orlando, for Appellee.
J.E. Willingham, Jr., Maitland, for guardian ad litem.
GREEN, O.L., Jr., Associate Judge.
Shirley Fredrick appeals from an order terminating parental rights and committing her natural child, K.F., to the Department of Health and Rehabilitative Services for adoption. We affirm.
Fredrick complains she was not provided counsel sufficiently early during a long course of legal proceedings so that she could better protect herself from the intrusive *1165 conduct of the state. She complains about not being granted a trial continuance so that she could properly prepare for the adjudicatory proceeding. She also complains the amended petition for termination of parental rights was legally deficient and the trial judge committed reversible errors during the adjudicatory and dispositional hearing. These issues will be addressed after a basic recitation of the case history.
This case originated in January of 1982 when Fredrick's child, K.F., then age seven, was adjudicated dependent because of truancy. The dependency order required family counseling to include the appellant, K.F., and K.F.'s four brothers. Fredrick was required to attend parenting classes and to become involved in a homemaker's program. Semi-annual reviews of the case were held by the court over the next three years.
During December, 1984, HRS filed a dependency foster care placement petition on behalf of K.F. The petition cited K.F.'s continued truancy and Fredrick's neglect and inability or refusal to control or provide for her five children. The petition also recited that all efforts to rehabilitate the family had failed, although some thirteen varied programs had been attempted. K.F. was adjudicated dependent on December 17, 1984. Shortly thereafter, she was removed from Fredrick's home and placed in a child care home approximately fifteen miles from where Fredrick lived.
A performance agreement was entered into between HRS and Fredrick in February of 1985. The performance agreement specified that the mother should strive to develop parenting skills and new methods of discipline; provide proper food, clothing, medical care and housing for the family; and obtain full-time employment to provide sufficient income to meet the needs of her family. The performance agreement also required Fredrick to participate in parenting classes and obtain a home of at least three bedrooms with proper food and clothing for the child. Fredrick agreed to visit K.F. at the care home and provide her own transportation.
On June 14, 1985, a review hearing was held at which the judge continued the performance agreement for three months and required the mother to complete a CETA application within five days and to enroll within five days in parenting classes. Subsequently, in December 1985, another review was held which was not attended by Fredrick. The court then referred the case to the Adoption and Related Services Unit of HRS for further action.
On February 7, 1986, HRS filed a petition for termination of parental rights and permanent commitment for adoption on behalf of K.F., and counsel was promptly appointed for Fredrick. Fredrick's counsel was granted a motion for continuance of a final hearing scheduled for July 23, 1986. On September 4, 1986, four days before the final hearing was held, HRS filed an amended petition for termination of parental rights and permanent commitment for adoption. On September 8, 1986, Fredrick's attorney unsuccessfully moved to continue the final hearing because of new allegations in the amended petition. Both petitions recited as a basis for permanent commitment that K.F. was previously adjudged dependent because of habitual truancy and that the child had been in foster care since January 4, 1985. Both petitions recited Fredrick's failure to comply with the performance agreement filed on February 15, 1985. Both petitions alleged abandonment and neglect of K.F. by Fredrick. The amended petition added the terms "chronic neglect" and "prospective neglect." The final hearing took place over a three-day period.
It was established that during the course of HRS's contact with Fredrick she did little or nothing to require school attendance of the children, and, on many occasions, when her children were literally running the streets at night, she was at bars, including a particular establishment known as Liquor World. On one occasion, after midnight, K.F. was seen by a police officer running down the middle of a busy public highway, barely being missed by a moving vehicle. The officer complained to Fredrick with no responsive improvement of supervision by her.
*1166 As previously mentioned, K.F. was eventually adjudged to be dependent and placed in a child care home ten to fifteen miles from where Fredrick lived. Fredrick did not visit K.F. for over a year during the time the child was at the care facility, and only sent one card during that period.
K.F. complained to authorities that she was often hungry at home, although her testimony at the trial was defensive of her mother. When asked if she was ever hungry at home, the child testified, "I don't eat much anyway  I don't get hungry too often."
The evidence established that Fredrick's living accomodations were woefully inadequate and unsuitable for the rearing of children. It was further established that in spite of several opportunities presented to Fredrick, such as CETA training and courses to train her in parental techniques, Fredrick made little effort to improve herself. Fredrick's three older children are not residing at home and her youngest child resides in a private institution for emotionally disturbed children. It is significant that the youngest child was taken into care by HRS for the same reason as K.F. It is also significant that the condition of this child has greatly improved since he was taken from Fredrick's home.
The record reflects that on the occasions K.F. was removed from Fredrick's home, her condition and general performance improved dramatically. Fredrick presented the testimony of a psychologist and a mental health counselor, who testified that K.F. retains a strong family bond. The psychologist recommended that every effort be made to reunite the family. On the other hand, K.F. was assigned a guardian ad litem, who joins the state in recommending K.F.'s permanent placement for adoption.
We now address the issues raised in this appeal. Fredrick complains she was not appointed counsel until the petition for permanent commitment was filed. There is nothing in the record that indicates HRS was, during the period Fredrick was without counsel, taking steps other than to rehabilitate her in becoming a suitable custodial parent. While we recognize that performance agreements and dependency proceedings are often the first steps towards permanent commitment, there does not appear to be evidence that HRS's relationship with Fredrick was of an extreme adversarial nature before the filing of the petition for permanent commitment. To the contrary, it appears that HRS would have welcomed a significant improvement by Fredrick. The evidence was conclusive that HRS made valiant efforts to reunite K.F. with Fredrick but that Fredrick was a miserable failure in her parental role.
The right to counsel in juvenile proceedings must be determined by the relevant circumstances of each case, including the following criteria: (1) the potential length of parent-child separation; (2) the degree of parental restrictions on visitations; (3) the presence or absence of parental consent; (4) the presence or absence of disputed facts; and (5) the complexity of the proceedings in terms of witnesses and documents. Cleaver v. Wilcox, 499 F.2d 940 (9th Cir.1974); In Interest of D.B., 385 So.2d 83 (Fla. 1980); Potvin v. Keller, 313 So.2d 703 (Fla. 1975); White v. Department of Health and Rehabilitative Services, 483 So.2d 861 (Fla. 5th DCA 1986); In Interest of S.J.T., 475 So.2d 951 (Fla. 1st DCA 1985).
In the instant case, reasonable efforts were made by HRS to avoid a prolonged separation of Fredrick from K.F. prior to the filing of the petition for permanent commitment. HRS encouraged visitation by Fredrick during the time K.F. was residing in the child facility. Furthermore, it does not appear that Fredrick strenuously objected to the intrusion of HRS into her family life, but only resented certain provisions in the consent agreement. Finally, the ultimate facts in the instant case are not seriously disputed and the relationship of HRS with Fredrick only became complex in terms of witnesses and documents upon the filing of the petition for permanent commitment.
Neither the prior dependency adjudications of K.F. nor violation of the performance agreement form a significant basis for permanent termination of parental rights in *1167 the instant case. The facts upon which those occurrences ensued were proven by direct and competent evidence in the trial proceedings below. In Interest of R.W., 495 So.2d 133 (Fla. 1986); White v. Department of Health and Rehabilitative Services; In Interest of S.J.T.
Fredrick complains that the original petition and amended petition are vague, indefinite, and fail to state a basis upon which permanent commitment may be ordered. We find that the amended petition adequately states a cause of action. Fla.R.Juv.P. 8.810(a)(1). We also find that the difference between the two petitions is not significant and, under the circumstances of this case, the changes did not cause prejudice to Fredrick, either with respect to trial preparations or participation in trial proceedings. Fredrick's attorney was provided all available relevant material before the trial and has not complained about an insufficiency of pretrial information. We determine that no prejudice has been shown by the trial judge's denial of the motion for continuance. A trial judge has broad discretion with respect to motions for continuances and we find no abuse of discretion in this case. In Re Interest of L. McC., 490 So.2d 1346 (Fla. 4th DCA 1986); In Re Interest of T.J., 466 So.2d 17 (Fla. 5th DCA 1985); Fuller v. Rinebolt, 382 So.2d 1239 (Fla. 4th DCA 1980).
Fredrick complains that the court erred in admitting into evidence the performance agreement which her attorney contends was signed by her under force of threat. This contention is simply not supported by the record. J.H. v. State, 480 So.2d 680 (Fla. 1st DCA 1985).
We find the evidence to be overwhelming that K.F. should be placed for involuntary permanent commitment. In Interest of Smith, 299 So.2d 127 (Fla. 3d DCA 1974). We recognize that the trial judge should not have considered certain hearsay testimony with respect to Fredrick using food stamp money to purchase marijuana when her children were going hungry. We find this to be harmless error. (For a contrary result, see In Interest of S.J.T.) We also believe that the trial judge should have scheduled a disposition hearing rather than to consider HRS reports before concluding the adjudicatory hearing. We note that the statute is not clearly defined with respect to prohibiting a combination of adjudicatory and dispositional hearings; however, we stress that the better practice is that these hearings not be combined. § 39.408(3)(d), Fla. Stat. (1985). In any event, virtually all of the information contained in the HRS reports was proved by other competent evidence. In Interest of L.R.R., 455 So.2d 598 (Fla. 5th DCA 1984); In Interest of R.A.L., 440 So.2d 473 (Fla. 5th DCA 1983).
Finally, Fredrick complains that the trial court failed to order a new predisposition report. It is significant with respect to this issue that the child, K.F., was adjudged dependent on two previous occasions. We note that the evidence presented in this case, including HRS reports, addressed Fredrick's recent living conditions and it does not appear that Fredrick was prejudiced by the lack of a formal report. In Interest of L.R.R.
In summation, we determine that the order permanently terminating parental rights in this case is
AFFIRMED.
UPCHURCH, F.D., Jr., Judge, Retired, concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.
This is an appeal of a judgment permanently terminating a mother's rights in and to her fourteen-year-old daughter.
In early 1982, K.F. was adjudicated to be dependent because of truancy from school. In late 1984, after a series of other review hearings, H.R.S. filed a petition for review, citing the child's continued truancy and the mother's alleged neglect and inability to provide for her children. H.R.S. sought and obtained custody of K.F., and the child was put into the Mt. Dora Christian Home and Bible School. At neither this later review hearing nor any of the prior dependency proceedings was the mother represented *1168 by, or offered the services of, legal counsel.
After H.R.S. removed K.F. from the mother's home, H.R.S. drafted a performance agreement without the mother's input and took it to the mother for signing. The mother, who attended school through the eighth grade and was unrepresented by legal counsel, was unable to read the performance agreement, so the H.R.S. worker read the major portions of the agreement to her. The mother voiced her objections to the agreement, but the H.R.S. worker told the mother that if she refused to sign the agreement it would be necessary to have a hearing before a judge. The mother signed the agreement.
A year after the performance agreement was entered into, H.R.S. filed a petition for termination of the mother's rights in and to K.F. and for the child's permanent commitment for adoption. The mother was then appointed legal counsel. The trial court denied her request for a predispositional report pursuant to section 39.408(3), Florida Statutes.
Less than a week before the final hearing, H.R.S. filed an amended petition for termination of parental rights. The original petition focused on K.F.'s prior dependency adjudications for truancy, the mother's alleged failure to comply with the performance agreement, and the mother's alleged failure to visit and financially support the child while the child was in foster care. The amended petition raised new and different allegations, including (1) that the child has been the victim of chronic neglect on various and diverse occasions subsequent to her adjudication of dependency; and (2) that the mother's failure to substantially comply with the substantive requirements of the performance agreement placed the child at risk for "prospective neglect." The mother's attorney sought a continuance of the final hearing due to the amended petition's new allegations and its injection of new issues into the proceedings, but the motion was denied.
After the final hearing, the trial court permanently terminated the mother's rights in and to the child and the child's corresponding rights in and to the mother.
The events leading up to the final termination hearing and the hearing itself are riddled with reversible errors and violations of the mother's legal rights.

I. FAILURE TO GRANT CONTINUANCE
The trial court abused its discretion in failing to grant the mother's motion to continue the final termination hearing. The amended petition, filed but two working days before the final hearing was held, did not merely clarify the pleadings, as urged by H.R.S., but substantially and substantively changed and added to the grounds for termination of parental rights alleged in the original petition. The fact that the mother had obtained substantial discovery before the final hearing cannot alter that fact. Though a trial court has broad discretion in granting or denying continuances, in this case the mother's legal counsel simply had insufficient time to properly prepare a defense to these new allegations. Cf. In the Interest of T.J., 466 So.2d 17 (Fla. 5th DCA 1985) (trial court abused its discretion in denying a continuance of a termination hearing where the hearing was scheduled only one month after counsel for the mother was appointed and counsel had not completed preparation for the hearing).

II. ADMITTANCE OF HEARSAY EVIDENCE
Reversible error was committed when the trial court admitted hearsay evidence at the termination hearing. In the termination proceeding the trial court referred to, and considered, hearsay evidence in the form of a statement made by K.F.'s brother that the mother bartered food stamps for marijuana. In addition, other hearsay evidence in the form of letters regarding the mother's progress with homemaker services, letters from the child's school principal, and statements made by cottage parents about the child's condition was admitted, although not expressly relied upon by the court. This type of insidious hearsay *1169 evidence should not have been admitted at the termination proceeding.
Directly on point is In the Interest of S.J.T., 475 So.2d 951 (Fla. 1st DCA 1985), which involved a father's objection to an adjudication of dependency on the basis of hearsay evidence admitted at the adjudicatory hearing. The only witness who appeared on behalf of H.R.S. at the adjudicatory hearing was a case worker who neither had actual knowledge of the information contained in the exhibits admitted into evidence, nor had custody of them, nor was otherwise qualified as a witness as required by the business records exception to the hearsay rule in the Florida Evidence Code. The exhibits received into evidence, including a referral summary prepared by H.R.S. and case notes of a family outreach center, fell into the classic definition of hearsay. The court held the conduct of the proceedings to be fundamentally unfair and obviously at variance with the procedure outlined in chapter 39, Florida Statutes.

III. ADVICE AS TO RIGHT TO COUNSEL
The mother was entitled in the dependency proceeding to be advised of her right to obtain private counsel but was not so advised. Section 39.406, Florida Statutes, applicable to dependency cases, provides:
Nothwithstanding the filing of an answer or any pleading, the child or parent shall, prior to an adjudicatory hearing, be advised by the court of his right to counsel and shall be given an opportunity to deny the allegations in the petition for dependency or to enter a plea to allegations in the petition before the court.
In In the Interest of A.T.P., 427 So.2d 355 (Fla. 5th DCA 1983), this court, citing In the Interest of D.B., 385 So.2d 83 (Fla. 1980) and section 39.406, Florida Statutes, recognized a parent's entitlement to be advised of the right to be represented by privately retained counsel in a detention hearing which was in essence a summary adjudicatory hearing. In In the Interest of D.B., the Florida Supreme court noted that:
All parents must be given notice of a dependency hearing, advised that they have a right to be represented by counsel of their choice, and afforded a period of time to obtain counsel which is reasonable under the circumstances.
Id. at 91.
Evidence from, or of, proceedings where the parent is required to answer allegations adverse to the parent's legal interests should not be used in any part of a subsequent permanent termination proceeding unless the parent is advised of his right to counsel. The cumulative effect of these earlier uncounseled proceedings upon the permanent termination proceeding diminishes the effectiveness of counsel at later proceedings. To be effective, counsel must be afforded at the earliest critical stage of the proceeding. Therefore, unless the parent is advised of and knowingly waives the right to counsel, the earlier uncounseled proceedings should not be used in subsequent proceedings to terminate parental rights. See the separate opinion in White v. Department of H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986). In this case, H.R.S., in paragraph 4 of its petition and at the hearing thereon, relied on the prior adjudication of child dependency in a proceeding in which the mother was not provided, or offered, legal counsel to deprive the mother of her parental rights and was not advised that she had the right to counsel of her choice. See In the Interest of M.D.A., 517 So.2d 711 (Fla. 4th DCA 1987), where the Fourth District Court of Appeal reversed a judgment permanently terminating parental rights because the parent had not been notified of his right to counsel of his choice during dependency proceedings occurring several years before the permanent termination.

IV. RIGHT TO APPOINTED COUNSEL
Appointed counsel is required when the character of the proceedings is such that permanent termination of the parent's rights is at stake. See the separate opinion in White, 483 So.2d at 866. In In the Interest of D.B., 385 So.2d at 83, 87, 91, the supreme court stated, "[W]e find that a constitutional right to counsel necessarily *1170 arises where the proceedings can result in a permanent loss of parental custody." "[C]ounsel will always be required where permanent termination of custody might result." (emphasis supplied)
In the case at bar, the mother was not represented by counsel when she signed the performance agreement. The petition for termination of parental rights alleged, and the final judgment of termination relied upon the mother's failures while endeavoring to comply with the performance agreement as a basis for termination.
The use of the performance agreement in the permanent termination of the mother's rights in and to her child was improper. The consequences of the failure to perform the performance agreement are based on uncounseled acts of the mother. The mother's failure to perform the performance agreement underlies the finding of neglect at the adjudicatory proceeding. As a permanent loss of parental rights "can result" or "might result" (In the Interest of D.B.), from a parent entering into a performance agreement, the mother was entitled to appointed counsel at that stage of the proceedings.

V. LEGAL INSUFFICIENCY OF THE PETITION FOR TERMINATION
The allegations in the amended petition are impermissibly vague and legally insufficient. Mere noncompliance with a performance agreement is insufficient to permit the permanent severance of the mother's rights in and to her child. In the Interest of R.W., 495 So.2d 133 (Fla. 1986). In the amended petition in this case, however, the only allegations not related to the performance agreement are:
4. That [K.F.] was adjudicated to be a dependent child by reason of neglect on June 15, 1979, and by reason of habitual truancy on January 29, 1982, that said child has been the victim of chronic neglect on various and diverse occasions subsequent thereto, and that said child has been continuously in foster care since January 4, 1985.
* * * * * *
6. That [the mother] has failed to visit [K.F.] since some time prior to April, 1985, with the exception of two (2) visitations within the last two (2) months, and has failed to provide financial support for said child and has failed to maintain contact with the Department of Health and Rehabilitative Services; and that such action on the part of [the mother] constitutes abandonment and neglect of said child.
Paragraph 4 of the amended petition does not allege that the mother neglected her daughter  only that the daughter was neglected. Neither does this paragraph give adequate notice to the mother of necessary specificity as to how and when the child was "chronically neglected." Such vague allegations would be insufficient in a criminal case, and should be insufficient in a case such as this one where a parent is "charged" with abuse, neglect, or abandonment of a child in foster care, and if found "guilty" will have constitutionally protected parental rights forfeited. See Florida Rule of Juvenile Procedure 8.810(a), which requires a petition for permanent commitment to "contain allegations of facts necessary to support such a commitment," and In the Interest of Y.F.W., 494 So.2d 308 (Fla. 1st DCA 1986).
As to paragraph 6 in the amended petition, an allegation that the mother allegedly failed to visit and support the child who was in foster care cannot support a finding of statutory neglect, section 39.01(30), Florida Statutes (Supp. 1986). There is no showing that the mother was able to provide support, or that she had a legal duty to pay H.R.S. for custodial care. Further, there was no showing that such financial support was requested or that the amount of monetary support had been adjudicated or otherwise established. As to the question of whether a mother can be found to have abandoned her child while it is in the care and custody of H.R.S., see generally the separate opinions in In the Interest of B.W., 479 So.2d 740 (Fla. 5th DCA 1985) and the supreme court's opinion in that case at 498 So.2d 946 (Fla. 1986). Additionally, the alleged grounds of abandonment in paragraph 6 of the amended *1171 petition cannot be maintained since the petition for termination fails to allege that the mother was able to do that which it was alleged she failed to do. Section 39.01(1), Florida Statutes, defines abandonment as:
a situation in which the parent or legal custodian of a child or, in the absence of the parent or legal custodian, the person responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. (emphasis supplied)
Section 39.01(1), Florida Statutes, thus does not provide for the termination of parental rights when abandonment is involuntary. In the Interest of B.W., 498 So.2d 946; In the Interest of P.S., 384 So.2d 656 (Fla. 5th DCA 1980).
The charge of abandonment in the instant case related to failure by the mother to visit and financially support the child "prior to April, 1985." The child had been in continuous foster care under H.R.S. since January 4, 1985. The mother's actions of non-visitation and non-support are involuntary because of conditions resulting from the mother's poverty and the fact that the state had taken custody of her child and placed it a distance away from the mother. See In the Interest of T.S., 464 So.2d 677, 684 (Fla. 5th DCA 1985). The mother lacked transportation to visit the child's foster care facility. The legal rights of natural parents in and to their child and the rights of that child in and to his parents should not be permanently terminated as a result of involuntary conditions such as ignorance and poverty. Further, there is no legal duty for a parent to maintain contact with H.R.S. and there is no legal basis for forfeiting parental rights for failure to do so.

VI. FAILURE TO ORDER PREDISPOSITIONAL REPORT
The trial court erred in failing to order a predisposition report as requested by the mother. See the separate opinion in White, 483 So.2d at 866-67. Section 39.408(3), Florida Statutes, requires that at a disposition hearing "the court shall receive and consider a predispositional study." (emphasis supplied) As the permanent commitment hearing constituted a final disposition hearing, the mother was entitled to a study which related to the circumstances and acts current at the time of the permanent commitment hearing.
For the above reasons, the trial court erred in permanently terminating the mother's parental rights in and to her minor child, K.F., and the appealed judgment should be reversed.