547 So.2d 328 (1989)
Edith LETT, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-295.
District Court of Appeal of Florida, Fifth District.
August 10, 1989.
Jane E. Carey of Morall & Carey, Orlando, for appellant.
James A. Sawyer, Jr., for Dept. of Health and Rehabilitative Services, Orlando, for appellee.
*329 DANIEL, Chief Judge.
This is an appeal from an order terminating the parental rights of a mother to her child.[1] The child was born in 1984.
Before parental rights can be permanently terminated, the state must show abandonment, abuse or neglect by clear and convincing evidence. In the Interest of R.W., 495 So.2d 133 (Fla. 1986).
Section 39.01, Florida Statutes, defines these terms as follows:
(1) "Abandoned" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations... .
(2) "Abuse" means any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired.
* * * * * *
(37) "Neglect" occurs when the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child's welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired ...
The evidence at the permanent commitment hearing established that the mother is twenty-six years old, has an I.Q. of 72 and has two children in addition to the child in the instant case. The mother was an abused child herself and has a history of living with abusive and violent men. The mother has been convicted and was incarcerated for abusing both of her other children, one who apparently suffered fractures to one or both arms, has scarring and developmental problems, and one who has been burned with an iron on the shoulders, hips and buttocks.
The mother and the child in the instant case were living with the child's father, also an abusive and violent type. The father hit the mother causing her to go to the hospital. When the father threw the mother out of the house, she left the child with him for several days. The father later turned the child over to HRS. The child had to be hospitalized with sores. HRS has received reports that the child was only allowed one diaper per day and had been found in urine-soaked blankets and clothes.
The clinical psychologist who examined the mother testified that she has had a known history as a child abuser, has a personality disorder which indicated that she was prone to repeat her history and that she has a poor prognosis for improvement. The psychologist predicted child abuse and violence if the child were to live with her mother. The mother denied any abuse and exhibited no guilt about her behavior. The man with whom the mother is currently living (not the father) has been convicted of homicide, disorderly conduct, several assaults, several aggravated assaults, carrying a concealed weapon and fraud.
The mother had entered into performance agreements with HRS when the child was placed in foster care. The mother did not comply with the agreements and has had little or sporadic visitation with the child. The mother did not attend counseling sessions as required and apparently felt that they were a waste of time.
This evidence is sufficient to support the trial court's determination to permanently sever the mother's parental rights. See Fredrick v. Department of Health & Rehabilitative Services, 523 So.2d 1164 (Fla. 5th DCA 1988); Spankie v. Department of Health & Rehabilitative Services, 505 So.2d 1357 (Fla. 5th DCA 1987).
While there is some reference in the dissent to the admission of hearsay evidence *330 at the commitment hearing it should be noted that such issue has not been raised on appeal and therefore should not be considered. See Spankie, 505 So.2d at 1358 n. 1. In addition, in Fredrick, under similar circumstances, this court has held that admission of hearsay evidence was harmless error.
While the evidence of abandonment here may not be clear, the evidence of abuse and neglect, both past and prospective, is clear and convincing. See Spankie. Accordingly, the judgment is affirmed.
AFFIRMED.
ORFINGER, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.
This is another appeal by a mother whose parental rights to her child have been terminated by final judgment of the trial court. As in all of these cases, there are a lot of details and the mother has many problems and inadequacies and is not a perfect mother; but basically, the mother's parental rights to one of her children were terminated in this case because (1) the child was previously adjudicated to be dependent, (2) when the child's father ran the mother from the home, the mother left the child in the custody of the child's father, who turned the child over to H.R.S. and when the mother returned and wanted custody, the father told the mother that the child was "dead and buried," (3) the mother failed to comply with a performance agreement, and (4) "prospective abuse or neglect"; in other words, H.R.S. and the trial court were satisfied that because of the mother's past lifestyle, emotional problems, and history, the child's future was "at risk."
This case should be reversed because the trial court erred (1) by admitting into evidence the permanent termination hearing hearsay evidence involved in a prior dependency adjudication proceeding, see In the Interest of S.J.T., 475 So.2d 951 (Fla. 1st DCA 1985) and the dissent in Frederick v. H.R.S., 523 So.2d 1164 (Fla. 5th DCA 1988), rev. denied, 531 So.2d 1353 (Fla. 1988) and the separate opinion in White v. H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986); (2) the failure of the mother to comply with an H.R.S. performance agreement which is itself arbitrary, coerced, and based on a facially unconstitutional statute and is not a proper legal basis for permanently terminating parental rights, see In the Interest of R.W., 481 So.2d 548 (Fla. 5th DCA 1986), affirmed, 495 So.2d 133 (Fla. 1986), and (3) there is no statutory basis for terminating parental rights on the basis of speculation or inferences as to a parent's probable future or prospective abuse or neglect  the law requires clear and convincing evidence of actual, substantial, and real neglect or abuse of the child by the parent whose rights are being considered, and at a time when the parent had actual custody and control of the child and while able to provide necessary care, the parent intentionally or neglectfully failed to do so. See In the Interest of B.W., 498 So.2d 946 (Fla. 1986); and the dissents in Gunter v. H.R.S., 531 So.2d 345 (Fla. 5th DCA 1988) and Frederick v. H.R.S., 523 So.2d 1164 (Fla. 5th DCA 1988).
NOTES
[1] The court also severed the father's parental rights but that issue is not involved on appeal.