WENTWORTH, Judge.
Appellant seeks review of an order entered in the circuit court for Duval County by which appellant’s minor child was permanently committed to the Department of Health and Rehabilitative Services (HRS) for subsequent adoption. We affirm.
Appellant is the natural mother of a 12-year old male child whose natural father is deceased. Between 1978 and 1982 the child at times resided with his mother in her custody, and at other times was placed in foster care/HRS custody as an adjudicated dependent upon a finding that he was “deprived of necessary food, clothing, shelter....” In 1982 HRS filed a Petition for Change of Custody alleging that appellant had knowingly allowed the child to associate, stay overnight, and spend weekends with a known child molester. A hearing was held at which the child’s dependency was reaffirmed and he was again placed in foster care. Appellant thereafter signed a performance agreement, at the request of HRS, by which she agreed to initiate counseling and participate in a parenting skills class, maintain suitable housing, and make application for participation in a remedial literacy program.
In May 1983 HRS filed a Petition for Permanent Commitment, alleging that appellant had failed to comply with the conditions of the performance agreement. Legal counsel was appointed, and appellant then filed a motion to dismiss asserting that she is indigent and was neither represented by counsel nor afforded an opportunity to obtain appointed counsel prior to executing the performance agreement; the motion argued that such lack of counsel offends due process of law. The trial court denied appellant’s motion, indicating that there is no absolute constitutional right to counsel prior to initiation of the permanent commitment proceeding, and noting that appellant had failed to identify any circumstances in the present case which require the appointment of counsel at an earlier time. The trial court did suggest that if appellant were coerced into signing the performance agreement, or did not understand the terms thereof, such matters might be presented as a defense in the permanent commitment proceeding.
A permanent commitment hearing was held, at which testimony was received from appellant, various HRS counselors, a psychologist and a therapist, and the minor child’s present foster parent. An HRS worker testified that immediately prior to the 1982 hearing she indicated to appellant that she would recommend that the child be placed in foster care, and she further advised appellant of a “right to legal counsel.” The HRS worker testified that appellant stated that she did not want the services of an attorney.
Another HRS counselor who prepared the performance agreement testified that since appellant was unable to read the document she suggested the possibility of having a relative assist appellant. Appellant declined such assistance, and the counselor testified that she personally explained the various conditions and requirements which the agreement imposed, and the consequences of failing to comply therewith. Appellant testified in her own behalf and neither denied that she failed to perform in accordance with the agreement nor asserted that she did not understand the requirements of the document. Rather, appellant promised to comply in the future and explained that she has been hampered by emotional problems, illnesses, and lack of transportation. Several witnesses ex *916 pressed their opinions that the minor child’s best interests would be served by permanent severance of appellant’s parental rights.
The court entered an order finding that appellant understood the contents of the performance agreement yet failed to comply therewith, and would in the future likewise fail to so comply. The court found that appellant is unable to meet the child’s needs for love and emotional support, and that the child’s emotional well-being is dependent upon permanent placement and severance of appellant’s parental rights. The court determined that the execution of a performance agreement does not involve an absolute right to counsel, and that appellant had shown no circumstances requiring the appointment of counsel at that time in the present case. Finding permanent commitment and adoption to be in the best interests of the minor child, the court affirmed his dependency and ordered that he be permanently committed to HRS for subsequent adoption.
Appellant urges reversal on the grounds that: (1) the court erred in denying appellant’s motion to dismiss, which was predicated upon the absence of legal representation when appellant entered into the performance agreement; and that (2) the court erred in denying appellant’s request to call the child as a witness.
In Florida appointed legal counsel for indigents must be offered “in proceedings involving the permanent termination of parental rights.... ” In the Interest of D.B. and D.S., 385 So.2d 83 (Fla.1980). While non-compliance with a performance agreement might lead to the initiation of such a proceeding, execution of the performance agreement itself does not involve the permanent termination of parental rights, and should not in our opinion be considered such a proceeding as necessarily requires the appointment of legal counsel.
We note, however, that D.B. and D.S. also requires counsel when proceedings “may lead to criminal child abuse charges,” and the opinion further provides that in other instances there should be a case-by-case consideration as to whether the circumstances require legal representation. This approach is derived from Cleaver v. Wilcox, 499 F.2d 940 (9th Cir.1974), referenced in D.B. and D.S. and expressly adopted in Potvin v. Keller, 313 So.2d 703 (Fla.1975), which indicates that the criteria to be considered are:
(i) the potential length of parent-child separation, (ii) the degree of parental restrictions on visitation, (iii) the presence or absence of parental consent, (iv) the presence or absence of disputed facts, and (v) the complexity of the proceeding in terms of witnesses and documents....
In the present case the potential length of parent-child separation and the degree of parental restriction imposed by the performance agreement are substantial; however, there appear to be no disputed facts, appellant consented to the terms and execution of the performance agreement, and execution thereof was a straightforward matter with neither procedural nor substantive complexity. While appellant is essentially illiterate, we note that the terms of the agreement and the potential effect of non-compliance were clearly explained, and appellant does not assert any misunderstanding in this regard. In discussion with the HRS counselor appellant also communicated her decision that she did not need an attorney. Considering appellant’s consent to the performance agreement, the lack of complexity in relation thereto, and the absence of any disputed facts, we conclude that execution of the performance agreement in the present case does not require the provision of legal counsel, and the trial court therefore did not err by so ruling.
Although counsel requested at the hearing that the court inquire of the child “as to his desires,” upon the court’s refusal to do so counsel neither interposed any objection nor otherwise asserted that the court was required to hear such testimony. Any error in this regard has accordingly not been preserved for appellate review, since an appellate court ordinarily con *917 siders only such grounds or objections to the admission or exclusion of evidence as were specifically made in the trial court. See Tabasky v. Dreyfuss, 350 So.2d 520 (Fla. 3d DCA 1977).
Even were the issue preserved for review, appellant has failed to demonstrate error. While the child’s wishes may be a relevant consideration in cases involving termination of parental rights, they are not the controlling factor. See Bruggisser v. Bruggisser, 244 So.2d 518 (Fla. 3d DCA 1970). And the determination of whether to call the child as a witness in this regard is a matter within the trial court’s discretion. Cf., Dings v. Dings, 161 So.2d 227 (Fla. 2d DCA 1964). In the present case the trial court indicated that it had heard information from other witnesses, and that it would not be “fair to put [the child] on the spot.” It would appear that even had the child testified the court’s ultimate decision would have been unchanged, and we conclude that the court did not abuse its discretion by declining to question the child.
Affirmed.
ERVIN, C.J., and BOOTH, J., concur.