483 So.2d 861 (1986)
Phillip WHITE and Yolanda Shines, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 85-625, 85-635.
District Court of Appeal of Florida, Fifth District.
February 27, 1986.
Jane E. Carey, Orlando, for appellant Phillip White.
Wanda Fishalow, Orlando, for appellant Yolanda Shines.
Douglas E. Whitney, Dist. Counsel, and Gerry L. Clark, Asst. Dist. Counsel, Dept. of Health and Rehabilitative Services, Orlando, for appellee.
PER CURIAM.
Appellants appeal the permanent termination of their parental rights. We reverse. *862 The lower court neglected to inform appellants of their right to obtain counsel during the dependency proceedings. The results of these proceedings were used as a basis for the lower court's adjudication of permanent termination. See In the Interest of A.T.P., 427 So.2d 355 (Fla. 5th DCA 1983). For this reason, we reverse the order terminating parental rights.
REVERSED and REMANDED.
COBB, C.J., and UPCHURCH, J., concur.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially:
This case considers the constitutional due process right to appointed counsel, the due process right to be advised as to the right to be represented by counsel of choice, and the statutory and rule rights to counsel of parents during the various stages of a dependency proceeding which results in a permanent termination of parental rights.
An (amended) dependency petition relating to Tl. and Ts. Shines, twenty-month old twins of Phillip White and Yolanda Shines, was filed on January 4, 1984. At a detention hearing on the same day, the juvenile judge entered an "order of adjudication" finding as a fact that "both parents admitted [that] all allegations of the amended petition are true" and set a date for a disposition hearing. The next day, on an ex parte motion of H.R.S., the court ordered both parents to undergo psychological examination. At the disposition hearing on February 16, 1984, H.R.S. filed a predispositional report and, based on it and the factfinding at the detention hearing, the court adjudicated the twins to be dependent,[1] placed them in the temporary custody of H.R.S., and ordered the parents to enter into a performance agreement. Neither the parents nor the children were present, or represented by counsel, at the February 16, 1984, disposition hearing and there is no record that they were notified of that hearing. On March 7, 1984, the parents entered into a performance agreement. The parents were present at a review hearing on August 14, 1984. At a second review hearing on November 27, 1984, the parents were first informed of their right to counsel. The parents immediately requested the assistance of counsel and counsel was appointed to represent them. On January 15, 1985, a petition for termination of parental rights was filed alleging that the children had been abused and neglected, that the parents had abandoned the children by failing to support and to regularly visit them while they were in the H.R.S. foster home, and that the parents had failed to substantially comply with the performance agreement. The petition for permanent termination specifically alleged that "both children were adjudicated to be dependent by reason of abuse and neglect February 16, 1984."
During the adjudicatory hearing on the petition to terminate parental rights, the trial court took judicial notice of the petition for dependency and the order of January 4, 1984, upon request of the H.R.S. attorney. The dialogue between counsel and the court is as follows:
MR. LYKKEBAK: Request the Court, with regards to the file before it, take judicial notice first of the petition for dependency, which was filed the first of the year, 1984. The case was assigned the number JU84-10. And then the order of adjudication, which was dated, I believe, January 4, 1984 ...
THE COURT: (Interposing) Yes, I'm looking at it, in which both parents admitted all allegations of the amended petition.
MR. LYKKEBAK: That's correct, Your Honor.
THE COURT: All right.

*863 MR. LYKKEBAK: A  a predisposition report was then ordered, and it was filed February 15th, 1984. I'd request the Court take judicial notice of that.
THE COURT: All right. That motion granted also.
MR. LYKKEBAK. The dispositional hearing was conducted February 16, 1984, and I would request the Court take judicial notice of that order of disposition adjudicating the children to be dependent.
THE COURT: (Simultaneous Speech) That motion granted.
MR. LYKKEBAK: I believe that you can note on that order that the parents were not present. The persons present for the dispositional hearing were Jean Wilson and Sharon Graham for the Department and the Guardian Ad Litem. The parents were not there.
THE COURT: Let me interrupt there.
Ms. Fishalow, do you or Mr. Parkinson, either one, know why the parents weren't present at the order of disposition date, February 16, 1984?
MS. FISHALOW: They  I seem to recall, they were not aware of this hearing or had forgotten about the hearing, Your Honor, but I  would, at this time, since the Court is taking judicial notice that they weren't present, I'd question ...
THE COURT: (interposing) Well, I can't take judicial notice of that, but the directory reflects that they were not present, but ...
MS. FISHALOW: (Interposing) I would question the validity ...
THE COURT: (interposing) And they were not represented at that time, were they?
MS. FISHALOW: No, Your Honor, they were not represented and they weren't there. The child wasn't there.
THE COURT: (Simultaneous Speech) All right. Okay.
MS. FISHALOW: I'd  I'd question the validity of the order of disposition.
THE COURT: Well, the order is valid. All right, go ahead. I'll grant the motion to take judicial notice of that order, Mr. Lykkebak.
* * * * * *
MR. LYKKEBAK: All right. Then, Your Honor, there is an August 1, 1984, judicial review social study report which we request the Court take notice of.
THE COURT: Dated July 31 and then filed August 1, is that right?
MR. LYKKEBAK: Right.
THE COURT: All right, motion granted.
As shown by the dialogue above, H.R.S. also offered into evidence (or had the court take notice of) various written H.R.S. reports and inter-office memos (including the predisposition report filed February 15, 1984, and the August 1, 1984 social study report mentioned in the above dialogue) reciting facts relevant and material to the issues in the permanent termination hearing. The parents' counsel's hearsay objections were overruled on the basis of a sentence in section 39.408(2), Florida Statutes (1983) (§ 39.408(3), Fla. Stat. (Supp. 1984)), that authorizes the court to review such reports in a dependency disposition hearing "even though not competent in an adjudicatory hearing." When, in the adjudicatory hearing on the permanent termination petition, the parents' counsel objected that the H.R.S. reports were not only hearsay but went "far beyond what they were intended for", the court replied, "yeah, but I've already received them in evidence. I'm going to consider them." Thereafter the court considered as proved the facts in the earlier dependency proceedings in the case, and in the H.R.S. written reports in evidence, including the disclosures the parents made at the court ordered psychological examination of the parents.
At the conclusion of the permanent commitment hearing the trial court noted that "neglect and abuse has already been determined by the dependency [order]" and the H.R.S. counsel agreed. The trial court then directed the H.R.S. attorney to prepare an order permanently terminating parental rights based on all grounds alleged, *864 viz: abuse, neglect, abandonment, and failure to perform the performance agreement. The parents appeal arguing that they should have had counsel at the earlier stages of the proceedings, and that the court erred in (1) considering hearsay at the adjudicatory hearing on the permanent commitment petitions, (2) in relying on the earlier adjudication of abuse and neglect in the dependency proceedings, and (3) in not ordering a current predispositional study.
In In the Interest of D.B., 385 So.2d 83, 87, 91 (Fla. 1980), the supreme court stated, "[w]e find that a constitutional right to counsel necessarily arises where the proceedings can result in permanent loss of parental custody." "[C]ounsel will always be required where permanent termination of custody might result." (emphasis supplied)
Further, in In the Interest of D.B., 385 So.2d at 91, the Florida Supreme Court noted that:
certain due process requirements must be observed even though counsel is not constitutionally required. All parents must be given notice of a dependency hearing, advised that they have a right to be represented by counsel of their choice, and afforded a period of time to obtain counsel which is reasonable under the circumstances.
Section 39.406, Florida Statutes, applicable to dependency cases, provides:
Notwithstanding the filing of an answer or any pleading, the child or parent shall, prior to an adjudicatory hearing, be advised by the court of his right to counsel and should be given an opportunity to deny the allegations in the petition for dependency or to enter a plea to allegations in the petition before the court.
This court, citing section 39.406 and In the Interest of D.B., has also held that a parent is entitled to be advised of the right to be represented by privately retained counsel prior to an adjudicatory dependency hearing. In the Interest of A.T.P., 427 So.2d 355, 357 (Fla. 5th DCA 1983).
In A.T.P., the mother and child appeared at a "detention hearing" (actually a summary adjudication hearing). Id. at 356. After reading the dependency petition to them, the assistant state attorney told the child that if there were anything untrue in the petition, she could deny it and an adjudicatory hearing would be set. The child admitted the petition's truth and the court set the matter for dispositional hearing. Id. at 357. This court held that the trial court's failure to give the child an opportunity to obtain counsel was reversible error. Id. (citing In the Interest of D.B., supra).
The facts in this case are similar to those in A.T.P. Here, as in A.T.P., the affected parties (the child in A.T.P. and both parents in this case) at a detention hearing, were asked about and admitted all allegations in the amended dependency petition. In neither case were the parties represented by counsel at the hearing in which the trial court found and adjudicated the vital facts upon which the dependency charges were based and in neither case did the record reveal that the trial court advised the parties of their right to obtain private counsel.
The record in the instant case reveals that the parents were not advised of their right to retain counsel until the trial court's third review of the case. Thus, under the holding of A.T.P., the lower court's failure to advise the parents, at the earlier stages of the dependency proceedings, of their right to retain private counsel was a violation of their due process rights.[2] Furthermore, in the later adjudicatory hearing in *865 the permanent commitment proceeding, the court took judicial notice of the parents' earlier uncounseled admissions of the allegations of the petition in the early dependency proceedings.
Part of the problem in "permanent commitment" cases is that the applicable statutes and rules make the procedure unclear as to any earlier "dependency" proceedings. Section 39.404, Florida Statutes, contemplates one petition for dependency. Section 39.403, Florida Statutes (1983), contemplates two stages in the proceeding: an adjudicatory hearing and a disposition hearing.[3] Under section 39.41(1)(f) a permanent commitment is but one of six authorized dispositions in a dependency proceeding, notwithstanding that section 39.41(1)(f), as well as section 409.168(3)(a)6.h, Florida Statutes (1983), and other statutes[4] and rules and case law, establish procedural and substantive prerequisites to a permanent termination of parental rights not required as to the other five dispositions authorized by section 39.41(1).
A common practice seems to be, as in this case and in A.T.P., supra, that the parents (or the child), who are without counsel, are called on to plead to the dependency petition at what is actually a detention hearing held under section 39.402(6)(a), Florida Statutes, and that if the facts alleged in the dependency petition are admitted, the adjudicatory hearing is treated as a mere formality and the proceeding moves on to a disposition hearing. However, often, as here, dependency disposition hearings and dependency disposition orders are not final hearings and final orders in the cause but adjudicate dependency, place temporary custody of the child with H.R.S., and order the parents to enter into a performance agreement which, when unperformed, leads directly to, and in combination with the adjudicated facts underlying the original dependency petition and order, is the basis for, a later petition for termination of parental rights. In this situation the petition for termination of parental rights is, and is treated as, but another stage or continuation of the original dependency proceeding rather than as the initiation of a new (permanent termination) proceeding to be procedurally subdivided again into an adjudicatory stage and a separate disposition stage at which parents' constitutional and due process rights to counsel are recognized. This merging of the original dependency proceeding with the later permanent commitment proceeding, and the merging of the adjudicatory and disposition stages of the permanent commitment proceeding, result in confusion and substantive legal errors.[5]
In this case the parents did not have counsel, and were not advised of their right to counsel when asked to plead to the truth *866 of the allegations in the dependency petition; their uncounseled action in effect waived the adjudicatory stage of the original dependency proceeding and directly resulted in a factual finding of neglect and abuse and the entry of a dispositional order requiring the parents to enter into a performance agreement. Their failure to perform that agreement, as well as the trial court's reliance on the prior uncounseled adjudication of neglect and abuse, were the bases for the order permanently terminating their parental rights in this case.
To be effective, counsel must be afforded at the earliest critical stage of any proceeding and certainly before one is required to answer to charges and allegations adverse to their legal interests in that proceeding.[6] Because a permanent loss of parental rights "can result" or "might result" (In the Interest of D.B., supra), from admitting acts of child neglect, child abuse or acts of non-support and non-communication (statutory abandonment under § 39.01(1), Fla. Stat.), a parent, before being called on to plead to a dependency petition alleging child abuse, neglect or abandonment, should be advised by counsel (1) of the consequences of a plea of consent to a dependency proceeding, see, e.g., Monteiro v. State, 477 So.2d 45 (Fla. 3d DCA 1985), (2) of the right to a hearing, (3) of the effect of a dependency adjudication as to a subsequent permanent termination, and (4) of his or her rights at the time of entering into a performance agreement,[7] as well as at the permanent termination hearing. Every lawyer knows that a client needs an attorney before executing an agreement and that after executing an agreement an attorney's assistance is greatly reduced. There is no need to appoint counsel at the gallows' foot.
The situation is similar to that relating to counsel for a defendant charged with a misdemeanor. Under Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), if the accused is to receive even a very brief jail term he must have had, or to have knowingly waived, counsel at every critical stage of the proceeding. It is not absolutely necessary that the accused have, or waive counsel, but if he does not, he cannot be confined. Similarly, if dependency proceedings are to be part of a later proceeding resulting in permanent loss of parental custody, the parents should have, or knowingly waive, counsel. Conversely, if they do not have, or knowingly waive, counsel, those uncounseled proceedings should not be used as any part of the proceeding to permanently terminate parental rights.
Other errors resulted from the merger and commingling of the original dependency proceeding with the proceeding to permanently terminate parental rights in this case. There is a vital difference between the standard of proof in an initial adjudication of dependency and that in a permanent commitment proceeding. See In the Interest of L.T., 464 So.2d 201 (Fla. 5th DCA 1985). In this case, that difference in the burden of proof was ignored and the judicial notice of the initial adjudication of dependency, which was based on the parents uncounseled judicial admissions, was taken as clear and convincing proof of abuse and neglect in the permanent commitment proceeding.
The fact that the permanent commitment hearing constituted a new adjudicatory and disposition hearing involves two further matters. First, the parents were entitled to having the court consider a new predisposition study under section 39.408(2), Fla. Stat. (1983) (§ 39.408(3), Fla. Stat. (Supp. 1984)) that should have related to the acts and circumstances current at the time of the permanent commitment hearing on March 14, 1985, rather than only the two-year old predisposition study that was filed with the court at the disposition hearing on the original dependency proceeding on February *867 16, 1983.[8] Secondly, since the hearing on the petition for permanent commitment was also a new adjudicatory hearing, the trial court erred in receiving into evidence the written H.R.S. reports which are admissible only at a separate disposition hearing under section 39.408(2), Fla. Stat. (1983) [§ 39.408(3), Fla. Stat. (Supp. 1984)]. This action violated the usual hearsay rule (see § 90.802, Fla. Stat.) and the specific dictates of section 39.41(1)(f)3., Fla. Stat. (1984), that findings of fact in permanent commitment proceedings must be based on evidence admissible under the rules of evidence.
In sum, the trial court erred in receiving into evidence, over a proper hearsay objection, H.R.S.'s written reports and considering them in connection with the adjudicatory hearing on the permanent commitment petition. The trial court also erred in the permanent commitment hearing in taking judicial notice of the adjudication of neglect and abuse in the earlier dependency hearing in which the parents were not represented by counsel nor advised, as required by statute and due process, of their right to counsel, and in which the standard of proof was less than in the permanent commitment proceeding. The trial court also erred in not considering a new predispositional study at the disposition stage of the permanent commitment hearing. As the parents' admissions as to the original dependency petition in this case resulted in an adjudication of their abuse and neglect (which are two grounds for permanent commitment) and resulted in placement of the twins in a foster home where lack of parental visitation resulted in a charge of abandonment (a third ground for permanent commitment) and resulted in a performance agreement (the failure to perform being a fourth ground for permanent commitment), the parents were entitled to counsel at every stage of the dependency proceeding including prior to being called on to plea to the charges of neglect and abuse in original dependency proceedings and before entry into the performance agreement[9] because both matters contributed and led directly to the permanent termination of parental rights in this case.
NOTES
[1] The father, a disabled unemployed boyfriend of the mother, kept the children while the mother (described psychiatrically as "a dull, concrete, simple individual of low-intelligence) attempted to work and make a living for the "family" of five. The dependency adjudication was based on some abuse of one twin by the father and neglect by both parents as shown by the fact that the twins were greatly undernourished.
[2] The rights of parents to counsel in dependency proceedings have been restated in Florida Rule of Juvenile Procedure 8.560, which provides:

(a) Duty of the Court.
(1) At each stage of the proceeding the court shall advise the parent, guardian or custodian of their right to have counsel present. The court shall appoint counsel to insolvent persons who are so entitled as provided by law. The court shall ascertain whether the right to counsel is understood and where appropriate, knowingly and intelligently waived. The court shall enter its findings in writing with respect to the appointment or waiver of counsel for insolvent parties as aforementioned.
(2) The court may appoint an attorney for the parent, guardian or custodian of a child, as provided by law.
(b) Waiver of Counsel.
(1) No waiver shall be accepted where it appears that the party is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.
(2) A waiver of counsel made in court shall be of record. A waiver made out of court shall be in writing with not less than two attesting witnesses, and shall be filed with the court. Said witnesses shall attest the voluntary execution thereof.
(3) If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the party appears without counsel.
[3] The 1984 amendment to section 39.408 contemplates three stages: an arraignment hearing; and adjudicatory hearing, and a disposition hearing.
[4] See, e.g., § 39.41(1)(f)3., Fla. Stat. (Supp. 1984), which specifies that in termination proceedings judicial findings must be "by clear and convincing evidence at a hearing applying the rules of evidence... ."
[5] Some of this problem may have been corrected by an amendment to the Florida Juvenile Rules of Procedure effective January 1, 1985 (Petition of The Florida Bar to amend the Florida Rules of Juvenile Procedure, 462 So.2d 399 (Fla. 1984)). Under the 1985 rule amendment, Rule 8.510 treats the petition for permanent commitment as the initiation of a new and original proceeding, which, presumably, under the 1984 amendment to section 39.408, will be divided into three stages or hearings: arraignment, adjudication and disposition.
[6] This principle has frequently been applied in cases involving counsel in probation revocation proceedings. See Hicks v. State, 452 So.2d 606 (Fla. 4th DCA 1984), expressly approved, 478 So.2d 22 (Fla. 1985).
[7] The performance agreement in this case required the parents to earn a minimum of $618 per month. Had the parents been counseled when they executed the performance agreement, they might have reconsidered the reasonableness of such a requirement.
[8] A predisposition study as of March 14, 1985, would have disclosed that the twins, Tl. and Ts., were then in good health and that their mother was adequately caring for her older son Phillip Shines, age 5, and a new set of twins and was accordingly personally fit to care for Tl. and Ts. Here, as in T.S. v. H.R.S., 464 So.2d 677 (Fla. 5th DCA 1985), the charge of abandonment was based on the failure of the mother to visit her children as scheduled at a district H.R.S. office, a problem that is entirely eliminated by the return of the custody of the children to the mother. The trial court expressed doubt that Yolanda Shines could financially care for her older son, the new set of twins, and the twins Tl. and Ts. As to this, see In the Interest of J.R.C. and L.R.C. Henderson v. H.R.S., 480 So.2d 198 (Fla. 5th DCA 1986).
[9] Contra In the Interest of M.J.W., 453 So.2d 914 (Fla. 1st DCA 1984). However, this point is moot if section 39.41(1)(f)(1)(d), Florida Statutes, which authorizes permanent severance of all parental rights for failure to substantially comply with a performance agreement, is unconstitutional as was held in In the Interest of R.W., C.A.W., M.I.W., C.P., M.E.P., and A.P. (Pollock v. H.R.S.), 481 So.2d 548 (Fla. 5th DCA 1986).