504 So.2d 514 (1987)
IN the INTEREST OF D.E.N., a Child.
Deborah Lynn NICHOLSON, Appellant,
v.
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. 86-84.
District Court of Appeal of Florida, Fifth District.
March 26, 1987.
Deborah A. Sammons, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., James A. Peters, Asst. Atty. Gen., Tallahassee and James A. Sawyer, Jr., Dist. Counsel, Dept. of H.R.S., Orlando, for appellee.
PER CURIAM.
This appeal challenges termination of parental rights in regard to an infant who was incredibly brutalized, and fortunate to survive, during the first nine months of his existence. We affirm based upon the record herein, the law of Florida, and our previously expressed concern for the welfare of such children. See Carnrike v. Dept. of Health & Rehabilitative Services, *515 442 So.2d 1093 (Fla. 5th DCA 1983), review denied, 450 So.2d 485 (Fla. 1984).
This case began in June of 1984 when nine-month-old D.E.N. was taken by his mother, Deborah Nicholson (then age 18), and her boyfriend, Steve, to Orlando Regional Medical Center, suffering from a subdural hematoma. Further examination revealed that the child also had healed or healing fractures to the right clavicle, fifth and sixth ribs, the right ulna, right radius, right tibula and right fibula. D.E.N. also had bruises to his chest and left shin, and scratch marks on both sides of his face. Additionally, the child was in a very dirty, odorous condition. Nicholson explained that, as far as she knew, the injuries were caused by the child repeatedly falling out of bed. She admitted the child was in her physical custody at all times. The doctors handling the case, naturally concerned for the child's welfare, referred the matter to H.R.S.
On June 6, 1984, H.R.S. filed a petition for dependency based upon these facts. At the dependency hearing,[1] Nicholson admitted the allegations contained in the petition, and the child was adjudicated dependent on June 7, 1984. Shortly thereafter, Nicholson returned to her parents' home in Arizona, then went to Kansas City to be near her boyfriend, Steve, who was in jail there. Upon her return to Florida in late 1984, Nicholson was arrested on child abuse charges. She was convicted on two counts of child abuse by neglect for the injuries to D.E.N. and was sentenced to a 364-day term in the Orange County Jail and ten years' probation. As a condition of her probation, the court ordered that Nicholson have no unsupervised contact with any child less than fourteen years old during the ten-year probationary period.
H.R.S. petitioned to terminate Nicholson's parental rights and a permanent commitment hearing was held on December 3, 1985. Nicholson was fully represented by counsel at the commitment hearing, and has never objected to the absence of counsel at the prior dependency hearing. The petition to terminate parental rights alleged, however imperfectly, that Nicholson was guilty of abuse and neglect of D.E.N. These are sufficient grounds for termination. See § 39.41(1)(f)3.a., Fla. Stat. (1985). It is abundantly clear from the record of the permanent commitment proceedings below that Nicholson and her counsel were aware, from beginning to end, that child abuse was at issue. Never has Nicholson challenged the sufficiency of the allegations of neglect and abuse in the petition, neither at trial nor on appeal. Only the dissent has raised that challenge. As we have previously held, this court does not determine issues not raised on appeal. See In Re K.A.F., 442 So.2d 365, 366 (Fla. 5th DCA 1983).
The appellant's brief raises three issues. The first two concern the appellant's failure to comply with a performance agreement, and it is established that termination cannot be sustained on that basis. See In Re R.W., 481 So.2d 548 (Fla. 5th DCA), affirmed, 495 So.2d 133 (Fla. 1986). The third issue, as stated by appellant, asserts:
H.R.S. failed to prove by clear and convincing evidence that appellant abandoned, abused, or neglected her child to the extent that termination of parental rights was necessary to protect the manifest best interest of the child.
In other words, the sole viable issue on appeal is the sufficiency of the evidence at hearing to support the trial court's finding of abuse. That evidence was overwhelming.
The trial court, contrary to the representations of the dissent, did not base its termination decision merely on the prior dependency adjudication, which would contravene prior holdings of this court[2], but on the medical evidence and other testimony adduced at the commitment hearing. *516 At that hearing, all medical reports were admitted into evidence and the physical injuries alleged were stipulated to by counsel for Nicholson. Again, the admission of that evidence has not been challenged on appeal  except by the dissent. The stipulation by counsel for the parties as to the injuries to the child  even had abuse not been alleged at all  would sustain the instant judgment on the basis of Florida Rule of Civil Procedure 1.190(b).
Based upon the pleadings and evidence below, it was not necessary for the trial court, as contended by the dissent, to determine whether Nicholson brutally broke the bones of D.E.N. or whether she allowed her boyfriend to break them. It is enough that they were broken repeatedly while the child was with her. The evidence clearly supports the trial court's finding in paragraph 12 of its order:
12. That the evidence is clear and convincing and Deborah Lynn Nicholson has stipulated that [D.E.N.] received the following injuries while in the custody of Deborah Lynn Nicholson and prior to June 5, 1984, when the child was hospitalized: a healed or healing fracture to the right clavicle, a healed or healing fracture to the right fifth and sixth ribs, a healing fracture to the right ulna, a healing fracture to the right radius, a healing fracture to the right tibula, and a healing fracture to the right fibula, and a subdural hematoma; and that said injuries in a nine month old child constitute severe and extensive physical abuse.[3]
The dissent herein is not predicated upon the facts or issues in this case. It can only be understood by reference to the philosophical conviction candidly expressed in the dissent in Carnrike at 1094  i.e., that parental rights are not subject to forfeiture by governmental action, regardless of the neglect or abuse of a child. We believe they are.
AFFIRMED.
COBB and SHARP, JJ., concur.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
This is the appeal of an order permanently terminating a mother's parental rights.
A hospital reported to the Department of Health and Rehabilitative Services that D.E.N., a child, taken to the hospital by its mother and her boyfriend, had injuries consistent with child abuse. H.R.S. filed a dependency proceeding alleging generally that the child had "been abandoned, abused or neglected by the parents or other custodian." At the dependency hearing, without counsel, without advice that she was entitled to counsel, and without advice as to the possible consequences, the mother admitted the allegations of the dependency petition and on June 7, 1984, the child was adjudicated to be dependent and was placed in the custody of H.R.S. where it has been ever since. On August 15, 1984, the mother was given a performance agreement. On October 15, 1985, H.R.S. petitioned for permanent termination of parental rights. In the permanent commitment proceeding the mother was provided appointed legal counsel. Paragraphs 7 and 8 of the petition for permanent commitment read as follows:
7. That the said child was adjudicated to be dependent by reason of abuse and neglect on the 7th day of June, 1984; and that said child has been continuously in foster care since that date.
8. That a performance agreement was entered into between Deborah Lynn Nicholson and the Department of Health and Rehabilitative Services on the 15th day of August, 1984, that said agreement was extended on January 3, 1985, for six months; and that Deborah Lynn Nicholson has failed to substantially comply with the terms of said agreement.
The sole factual basis claimed for relief are the two allegations contained in paragraphs 7 and 8 above, which are, in effect, (1) that on June 7, 1984, the child was *517 adjudicated dependent by reason of abuse and neglect and had been continuously in foster care since that date, and (2) that the mother had failed to substantially comply with the terms of a performance agreement. These allegations are not only conclusory, they are legally insufficient. As to the ground based on the prior dependency adjudication (paragraph 7 of the petition), see White v. H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986); In re T.S., 464 So.2d 677 (Fla. 5th DCA 1985); In re L.T., 464 So.2d 201 (Fla. 5th DCA 1985); as to the ground of non-compliance with a performance agreement (paragraph 8 of the petition), see In re R.W., 495 So.2d 133 (Fla. 1986), In re P.A.D., 498 So.2d 1342 (Fla. 1st DCA 1986), and as to both grounds, see Darkes v. H.R.S., 495 So.2d 873 (Fla. 5th DCA 1986).
These two factual bases alleged in the petition were the sole factual allegations invoking the trial court's jurisdiction and the sole allegations providing the mother due process notice as to the issues in the case. The trial court clearly based the appealed order permanently severing the mother's parental rights on these two grounds, and under the facts and the law that was reversible error as a matter of law. The violation of basic constitutional principles of due process is fundamental error which can be corrected at any time.
Clearly the petition does not allege that the mother abused or neglected her child but only that the child had been adjudicated to be dependent by reason of some abuse or neglect by someone. The child appears to have been abused by the mother's boyfriend. Contrary to the implication in the majority opinion there is no contention or evidence that the mother "allowed" her boyfriend to break her child's bones or that the child's bones were broken "while the child was with her" (emphasis supplied), if by that statement is meant to imply the mother was physically present when the boyfriend hurt the child. Of course, the child was in the constructive custody of the natural mother at all times before it was placed in foster care. The majority opinion does not even contend that the petition alleges factual bases for abuse and neglect but instead refers to the trial court's finding that the mother stipulated (in the dependency proceeding in which the mother was without counsel) that the child had certain injuries. This "finding" does not meet the issue below or on this appeal. Further, the reference to Florida Rule of Civil Procedure 1.190(b) is but a tacit acknowledgement that there was no allegation in the petition that the mother abused or neglected the child or caused the child's injuries.
As a matter of fact, apparently at some time in 1984, the mother did plead no contest to a criminal charge that she neglected to promptly obtain medical treatment for the child. However, the termination petition does not allege as grounds for termination that in 1984 the mother neglected to obtain needed medical treatment for the child. The petition does not allege that the mother abused the child by causing its injuries. The petition alleges only that the mother failed to substantially comply with the terms of a performance agreement. That allegation is legally insufficient.
The mother in this case may well be less than adequate as a mother and, perhaps, should not be trusted with the unsupervised custody of her own child. However, the issue in this case is due process and legal fairness and not philosophical convictions. The real issue is not how badly this child was mistreated by someone nor whether "this infant needs and deserves a new beginning, a new start and a new family", nor how concerned in the past this court has been for the welfare of children, but whether the mother's parental rights have been permanently terminated in accordance with law and after compliance with all legal requirements. This appeal clearly presents a procedural due process violation.[1] The mother in this case is being deprived of her parental rights on the basis of two grounds, each of which have been held to be legally insufficient. The appealed order should be reversed as it, and the *518 majority opinion upholding it, directly conflicts with the cases cited above.
Everyone is concerned for the welfare of children. However, this court and the supreme court have also shown they recognize a dispassionate legal duty to also be concerned for the rights of parents. See In re R.W., 481 So.2d 548 (Fla. 5th DCA 1986), affirmed, 495 So.2d 133 (Fla. 1986); In re T.S., 464 So.2d 677 (Fla. 5th DCA 1985); In re L.T., 464 So.2d 201 (Fla. 5th DCA 1985); Hinkle v. Lindsey 424 So.2d 983 (Fla. 5th DCA 1983); and the five opinions in In re B.W., 479 So.2d 740 (Fla. 5th DCA 1985) and 498 So.2d 946 (Fla. 1986).
NOTES
[1] As pointed out by the Florida Supreme Court in In Interest of D.B., 385 So.2d 83 (Fla. 1980), Nicholson had no fundamental right to have counsel supplied by the state at the dependency hearing.
[2] See, e.g., White v. H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986); T.S. v. H.R.S., 464 So.2d 677 (Fla. 5th DCA 1985).
[3] This reference by the trial court to a stipulation by Nicholson, contrary to the dissent, clearly refers to the stipulation at the commitment hearing, at which time she was represented by counsel.
[1] This case is very similar to In re M.S., No. 86-1049 (Fla. 5th DCA March 26, 1987).