505 So.2d 1357 (1987)
Laurian Anne Rauen SPANKIE, Appellant,
v.
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. 86-1049.
District Court of Appeal of Florida, Fifth District.
March 26, 1987.
Rehearing Denied May 4, 1987.
Joe B. Weeks, Orlando, for appellant.
Timothy A. Straus, Orlando, for appellee Dept. of Health & Rehabilitative Services.
Donald R. West, Longwood, for appellee guardian ad litem.
PER CURIAM.
Laurian Spankie appeals a final judgment and order permanently committing her daughter to the Department of Health and Rehabilitative Services for adoption. The sole question presented is whether the evidence is sufficient to support the severance of parental rights.
The Florida Supreme Court has recently held that the failure to comply with a performance agreement is not by itself a sufficient legal basis for permanently terminating a parent's fundamental right to the custody of his or her children. In the Interest of R.W., 495 So.2d 133 (Fla. 1986). Permanent termination of parental rights must be based on a showing of neglect, abuse or abandonment by clear and convincing evidence. Id.; Darkes v. Dept. of Health and Rehab. Services, 495 So.2d 873 *1358 (Fla. 5th DCA 1986); § 39.41(1)(f)(3)(a), Fla. Stat. (1985). In In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982), the court held that neglect or abuse may be established prospectively; that is, parental rights may be terminated based on clear and convincing evidence that the child is or will be neglected or abused.
The petition here alleged that the mother had not complied with the performance agreement entered into December 10, 1984 between herself and HRS. It also alleged that but for the efforts of HRS, the child would be at risk for abuse, abandonment and/or neglect and that psychological counseling had proven to be fruitless. HRS also alleged that it was in the best interest of the child that she be permanently committed for subsequent adoption.[1]
The record reflects that the child, who was born in 1972, is a chronically abused and battered child. The father is deceased, having been shot and killed by the mother (the shooting was ruled accidental). The mother concedes a long history of abuse beginning when the child was six months old. This abuse has consisted of malnourishment, whippings, fractures of the child's leg, black eyes and numerous bruises. The mother raises dogs and travels frequently to show them. The child often smelled of dog feces, was dressed inappropriately (e.g., sundresses in the winter), was unaware of basic hygenic practices (e.g., daily washing) and was left alone all night on at least one occasion. There was also evidence of unsafe and unsanitary conditions at the mother's home and that she locked the child in her room and nailed boards over her window.
Between 1975 and 1982, the child remained with the mother under protective supervision. Conditions did not improve and in September 1983, the child was placed with a foster family. According to her guardian ad litem at the time, Judy Flanagan, the child seemed happy and put on some weight. The child was then transferred to a temporary facility where her visits with her mother were supervised because it was felt that the mother incited the child to misbehave. The child was again moved to another foster home for five to six months during which time her mother never visited. The child told Ms. Flanagan that her mother instructed her not to cooperate with HRS and to put a curse on the foster family. The child has been placed in at least a half dozen homes or facilities over the past few years.
The performance agreement required the mother to attend individual and group therapy, participate in family therapy and improve the unsanitary and unsafe living conditions in the home. At the time of the hearing, the court visited the home and found the home still cluttered and unsanitary. The mother was described by a psychologist as angry, hostile, impulsive, aggressive and was diagnosed by him as a passive-aggressive personality. Despite the recommendation of the therapist called by the mother, she stated she would continue to raise her dogs as before.
The guardian ad litem stated that the child was very "adoptable" and recommended permanent placement. Dr. Mara, a child psychologist, testified there was no relationship building with the mother and she could not recommend placement with her. While the child, now age fourteen, expressed a desire to live with her mother and denies any abuse, Dr. Mara testified that denial of abuse and a desire to be with the abusive parent is a characteristic of the "battered child" syndrome.
It is clear that the court did not terminate parental rights solely on the mother's failure to comply with the performance agreement but rather based it on a history of physical and emotional abuse with little prospect for improvement. The fact that the mother has consistently denied that any *1359 abuse has taken place and is unwilling to make any adjustments in her life was certainly considered by the court in determining whether any further counseling would be beneficial or productive.
AFFIRMED.
UPCHURCH, C.J., and SHARP, J., concur.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
This is an appeal of an order permanently terminating a mother's parental rights in and to her 14 year old daughter.
The critical issue on this appeal is not the sufficiency of the evidence but the insufficiency of the grounds alleged in the petition and the resulting lack of due process.
After alleging that the child was born, that its father was deceased, and that appellant was its mother, the relevant portions of the amended petition for permanent commitment allege:
4. That M.D.S. was adjudicated to be dependent by reason of abuse on November 1, 1972 and on January 26, 1979, and that said child has been continuously in foster care since October 21, 1983.
5. That a Performance Agreement was entered into on December 10, 1984 between the Department of Health and Rehabilitative Services and Laurian Anne Rauen Spankie and that Laurian Anne Rauen Spankie has failed to substantially comply with the requirements of that agreement.
6. That but for the efforts of the State of Florida, Department of Health and Rehabilitative Services, the child would be at risk for abuse, abandonment and/or neglect as demonstrated by the mother's prior care of the child.
7. That the State of Florida, Department of Health and Rehabilitative Services has continually furnished psychologic counselling [sic] for the mother and the child but same has proven to be fruitless in light of the overriding goal of family reunification.
8. That it is in the best interest of M.D.S. that she be permanently committed to the Department of Health and Rehabilitative Services for subsequent adoption.
The sole allegations invoking the trial court's jurisdiction and the sole allegations providing the mother due process notice of the material factual issues to be tried in the case are the allegations in paragraph 4 that the child was previously adjudicated dependent, in paragraph 5 that the mother has failed to substantially comply with the terms of a performance agreement, in paragraph 6 that the child would have been at risk of abuse and/or neglect if HRS had not had it in foster care, and the conclusion in paragraph 8 that permanent commitment is in the best interest of the child. These allegations are not only conclusory, they are legally insufficient. As to the ground based on the prior dependency adjudication (paragraph 4 of the petition), see White v. H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986); In re T.S., 464 So.2d 677 (Fla. 5th DCA 1985); In re L.T., 464 So.2d 201 (Fla. 5th DCA 1985); as to the ground of non-compliance with a performance agreement (paragraph 5 of the petition), see In re R.W., 495 So.2d 133 (Fla. 1986), In re P.A.D., 498 So.2d 1342 (Fla. 1st DCA 1986), and as to both grounds, see Darkes v. H.R.S., 495 So.2d 873 (Fla. 5th DCA 1986). As to the great irrelevant catch-all allegation in paragraph 7 ("it is in the best interest of the child"), see Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983).[1] In paragraph 6 of the petition H.R.S. alleges only that "but for" the efforts of H.R.S. in keeping the child in foster homes for three years the mother would have abused, abandoned, or neglected her child. Such an allegation is not "prospective"; it is speculative. It is *1360 like justifying the imprisonment of one who has not committed a crime because "but for" the fact that he was imprisoned he "would have" committed a crime. In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982), is in error. A speculation as to what may have happened in a turn of events that did not occur is not, and can never be, a substitute for clear and convincing evidence of essential facts.
In view of the legally insufficient allegations of the petition, all of the facts in this case are immaterial to a proper legal ruling on appeal.[2]
This case is somewhat typical of the common scenario in existence before the decisions in the above cited cases. Because of some bad condition or circumstance a child is charged with being dependent based on some neglect or abuse by a parent, usually the mother. Without the advice of counsel and thinking the matter is only temporary, the mother concedes the case, and the child is adjudicated dependent and placed in foster care. The mother is then told she cannot get her child back unless she agrees to a performance agreement and successfully performs it. She tries and time passes. H.R.S. then decides the mother has not substantially performed her performance agreement, is an insufficient parent, and files for permanent commitment based on (1) the prior adjudication of dependency, (2) the unperformed performance agreement, and (3) "the best interest of the child." At the hearing on the permanent commitment H.R.S. usually presents as evidence the facts and circumstances upon which the original dependency proceeding was based[3] and the mother's concessions and admissions at the dependency hearing, evidence of non-performance of the performance agreement, and other evidence acquired from the mother while she was endeavoring to pacify H.R.S. Sometimes H.R.S. tries to claim that the natural parent has "abandoned" the child because of non-visitation while the child is in foster care (see, for example, In re B.W., 479 So.2d 740 (Fla. 5th DCA 1985), quashed, 498 So.2d 946 (Fla. 1986) and In re T.S., 464 So.2d 677 (Fla. 5th DCA 1985); however, because a parent can hardly neglect or abuse a child in foster care, usually the hearing on the later petition for permanent commitment focuses on the parents' acts or omissions that were involved in the prior dependency proceedings. As a practical matter the petition for permanent commitment in this situation is but a change of position by H.R.S. which is effectually saying that on the original facts permanent commitment proceedings should have been originally filed instead of the dependency proceeding *1361 and that because the relevant and material facts have already been adjudicated sufficient in the earlier dependency proceeding, there is really nothing further needed to be proven in the permanent commitment proceedings. This court has recently pointed out the legal error in basing a permanent commitment on prior dependency proceedings especially where the parent is uncounseled (see In re L.T., supra; White v. H.R.S., supra; In re T.S., supra) and has held unconstitutional, as violative of substantive due process, the statute authorizing permanent severance of all parental rights for failure to substantially comply with performance agreements, In re R.W., 481 So.2d 548 (Fla. 5th DCA 1986), affirmed, 495 So.2d 133 (Fla. 1986). This case was filed and tried on insufficient allegations as to insufficient grounds.
The point is not that the trial judge did not terminate parental rights in this case "solely on the mother's failure to comply with the performance agreement." The error is that the facts alleged in the petition as grounds were the sole factual allegations invoking the trial court's jurisdiction and the sole allegation providing the mother due process notice as to the issues in the case and those allegations and grounds are legally insufficient. The trial court in this case clearly based the appealed order permanently severing the mother's parental rights on these grounds and, under the facts and law, that is reversible error as a matter of law no matter how sufficient the evidence in this case might be if relied on by the trial judge to support some proper allegations of proper grounds. If the trial court based its order even in part on improper grounds the order should be reversed. See In re T.D., 501 So.2d 93 (Fla. 1st DCA 1987). The issue is not the sufficiency of the evidence but whether the mother's parental rights have been permanently terminated in accordance with law and due process and after compliance with all legal requirements. They have not and the appealed order should be reversed. It is in direct conflict with the cases cited above.[4]
NOTES
[1] The dissent sets out the relevant portions of the amended petition. Paragraph 6 clearly alleges that the mother's prior care of the child demonstrated that the child had been abused and neglected by the mother. The sufficiency of that allegation as the basis for trial of those issues has never been raised by any party at trial or on appeal and thus has been raised only by the dissent. As we have previously held, this court does not determine issues not raised on appeal. See In Re K.A.F., 442 So.2d 365 (Fla. 5th DCA 1983).
[1] Anton Chekhov: "When children appear, we justify all our weaknesses, compromises, snobberies, by saying: `It's for the children's sake.'"
[2] The facts are interesting. The child in this case is no crawling baby, she is a fourteen year old girl who has been in various foster homes continuously for the last three years. She has always wanted, and still wants, to go home to live with her mother. Both the child and her mother deny that the mother abused the child. What is the effect of these denials? The mother's denials frustrated H.R.S., caused the mother to be considered "uncooperative," and rendered her psychological counseling "fruitless." (See Paragraph 7 of the petition set forth above) As to the child's denials of abuse, H.R.S. brought in a clinical psychologist with a Ph.D, two masters degrees, ten years experience specializing in child abuse, who was qualified as a child abuse expert, and who testified that two characteristics of "the battered child syndrome" are (1) that the child denies being abused, and (2) that the child desires to be with the abusive parent. The expert witness testified that the child in this case "showed characteristics of the emotionally abused child, to the point where the child did not recognize how bad she had it ..."; that the child "constantly denied that any abuse had really occurred"; that "her bonding to her mother was very strong" ("a pretty strong characteristic"); and that the child "wanted nothing more than to be with her mother, which is another common characteristic that we see"; and that even after three years of active therapy the child still had so many characteristics of the battered child syndrome that she "will still present a desire to be placed back with her mother." Heaven help us! And the futility of it all. Both experience and wisdom teach that, as a practical matter, ultimately the State will not be successful in permanently keeping this determined mother and her determined fourteen, now fifteen, year old daughter from maintaining their natural relationship.
[3] Apparently there is no statute of limitations in such a case. In this case the permanent commitment proceedings in 1986 went back to conduct in 1972 and 1979. See paragraph 4 of the petition.
[4] This case is very similar to In re D.E.N., 504 So.2d 514 (Fla. 5th DCA 1987).