671 So.2d 859 (1996)
Patricia WOFFORD, Appellant,
v.
Michele EID and Department of Health and Rehabilitative Services for the State of Florida, Appellees.
No. 95-2465.
District Court of Appeal of Florida, Fourth District.
April 17, 1996.
*860 John Edgar Sherrard of John Edgar Sherrard, P.A., Stuart, for appellant.
Stuart A. Webb, Fort Pierce, for Appellee-Michele Eid.
Katherine Mackenzie-Smith, Fort Pierce, for Appellee-HRS.
DELL, Judge.
Shortly after the birth of A.E., the Department of Health and Rehabilitative Services (HRS) filed a petition for adjudication of dependency. The trial court conducted several hearings culminating in a dispositional order adjudicating A.E. dependent. The order temporarily granted custody of A.E. to her cousin, Patricia Wofford (appellant), and required A.E.'s mother, Michele Eid (appellee), to enter a formal case plan with HRS. At all of these hearings, the trial court advised appellee of her right to seek counsel.
Appellee agreed to a case plan with a goal of reunification by April 1993. On October 19, 1992, the trial court approved the case plan, but did not advise appellee of her right to counsel at this hearing.
On April 19, 1993, the trial court conducted a hearing to review the status of the case plan. The trial court did not advise appellee of her right to counsel. The trial court continued this hearing to allow HRS to determine the feasibility of A.E. remaining in appellant's custody long term.
On May 17, 1993, the trial court concluded the status review hearing. The record does not reflect that the trial court advised appellee of her right to an attorney. As a result of this hearing, the trial court entered an order finding that appellee had not complied with her case plan in any respect and that there appeared "to be no reasonable likelihood that there [would] be substantial compliance in the foreseeable future." Consequently, the trial court terminated HRS's supervision and ordered that appellant's custody of A.E. be continued indefinitely. On January 18, 1994, appellee filed a pro se motion alleging she had complied with the case plan requirements and requesting A.E. be returned to her custody.
On March 28, 1994, appellant filed a petition for termination of parental rights. Appellant based the petition upon section 39.464(1)(e), Florida Statutes (Supp.1994)[1]. The petition alleged that A.E. had previously been adjudicated dependent and that appellee *861 had entered a case plan, but had not complied with its terms for more than twelve months. The petition cited extensively to the trial court's order resulting from the May 17, 1993 hearing.
The following day, the trial court conducted a hearing without appointing an attorney for appellee and without advising her of right to counsel. The trial court denied a pending motion of appellant and continued the hearing to allow HRS to conduct a new home study of appellee. On April 17, 1994, the court appointed counsel for appellee.
Appellant later amended her petition to include section 39.464(1)(c) and (d), Florida Statutes (Supp.1994), grounds for the parental termination. In doing so, appellant alleged that appellee's relationship with A.E. threatened A.E.'s life or well being and that appellee had engaged in egregious conduct endangering A.E.'s life.
Thereafter, the trial court became concerned appellee had not received adequate notice of her right to an attorney at previous hearings. The trial court surmised that such due process deficiencies may have irreparably contaminated the foundation of the termination action. After considering argument of counsel, the trial court found that it had violated Florida Rule of Juvenile Procedure 8.320 and entered an order dismissing appellant's fourth amended petition for termination of parental rights. The trial court stressed the fact that appellee had not been advised of her right to counsel at hearings that were a predicate to the termination proceedings.
Appellant contends the trial court erred in dismissing her fourth amended petition. She argues that appellee received adequate due process and that the trial court therefore should rely upon the previous dependency proceeding and the case plan resulting therefrom. Alternatively, appellant contends the trial court should not have dismissed the petition in its entirety because certain grounds of the petition did not involve the prior dependency hearings. For the reasons set forth below, we hold that the trial court correctly found that appellee had not been afforded an appropriate level of due process protection, and we affirm the trial court's dismissal of the petition to the extent the petition had been based upon the dependency proceeding.
Section 39.464 provides the grounds upon which a person may seek termination of parental rights. One of the grounds relied upon by appellant is subsection 39.464(1)(e):
(e) A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the family. Such 12-month period may begin to run only after the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the subsequent filing with the court of a case plan with a goal of reunification with the parent.
On May 17, 1993, the trial court conducted a hearing without advising appellee of her right to counsel and found that appellee had not complied with her case plan in any respect and that it appeared she would not do so in the foreseeable future. Such findings can hold great weight in a subsequent termination proceedings because failure to substantially comply with the case plan for twelve months after the case plan is filed constitutes evidence of continuing abuse. This allows for filing of a petition for termination of parental rights.
We find an analogous situation presented in In the Interest of D.F., K.W. and T.W., 622 So.2d 1102 (Fla. 1st DCA 1993). By way of background, section 34.464(1)(d) provides that a petition for termination of parental rights may also be filed where a parent has "engaged in egregious conduct that endangers the life, health, or safety of the child or *862 the child's sibling." In D.F., the First District Court discussed the due process considerations presented where a petition for dependency alleges facts that are synonymous with the facts constituting grounds for parental termination pursuant to section 39.464(4) (presently codified at section 39.464(1)(d)):
[W]henever a dependency petition states a Section 39.464(4) ground for a finding of dependency there will always exist a potential for the ultimate termination of parental rights. Therefore, the parents' right to counsel at the dependency stage of the proceedings must be zealously guarded. In fact, Florida law addresses such due process considerations by providing that parents be informed of a right to counsel at each stage of a dependency proceeding. In In the Interest of D.B. and D.S., 385 So.2d 83, 91 (Fla.1980), the supreme court stated that "counsel will always be required where permanent termination of custody might result." In any Section 39.464(4) dependency proceeding, the finding of "egregious abuse" may serve as a basis for the permanent termination of parental rights at a subsequent proceeding due to the operation of Florida Rule of Juvenile Procedure 8.330(a). Therefore, we perceive each dependency petition alleging "egregious abuse" to represent a potential for the permanent termination of parental rights.
622 So.2d at 1104-05 (citations omitted). The D.F. court held that where the dependency proceeding can directly comprise the foundation of a parental termination petition, the trial court should advise the parents of that possibility and of their right to counsel or to a court-appointed attorney if indigent.
The act of a parent entering into a case plan and then failing to substantially comply with its terms within twelve months produces the same consequences as a dependency adjudication containing findings of egregious abuse. Judge Cowart discussed the relationship of a case plan to permanent termination in his concurring opinion in White v. Department of Health and Rehabilitative Services, 483 So.2d 861, 865 (Fla. 5th DCA 1986):
[O]ften, as here, dependency disposition hearings and dependency disposition orders are not final hearings and final orders in the cause but adjudicate dependency, place temporary custody of the child with H.R.S., and order the parents to enter into a performance agreement which, when unperformed, leads directly to, and in combination with the adjudicated facts underlying the original dependency petition and order, is the basis for, a later petition for termination of parental rights.
Id. at 865. Under some circumstances, the case or performance plan "phase" of a dependency proceeding may be as crucial, if not more so, than the dependency adjudication itself.[2] Therefore, the parent's right to counsel during that time should be "zealously guarded." See D.F., 622 So.2d at 1105.
Due process principles control a parent's right to counsel in dependency proceedings. In the Interest of D.B., 385 So.2d 83, 89 (Fla.1980). "[T]he character of the interest and nature of the proceedings involved" will determine the degree of protection to be afforded. Id. In D.B., the supreme court held that "counsel will always be required where permanent termination of custody might result, but where there is no threat of permanent termination of parental custody, the test should be applied on a case-by-case basis." Id. at 91.
Whenever a parent who has entered a performance plan approaches the twelve-month point without compliance, the potential exists "for the ultimate termination of parental rights." D.F., 622 So.2d at 1105. This is particularly true where, as here, the trial court has found that the parent is not likely to substantially comply by the twelve-month deadline and then institutes mechanisms for long-term deprivation of that parent's *863 custody and for termination of the case-plan supervision. In this instance, it appeared at the May 17, 1993 hearing that there would be no further review or action taken before the passage of the critical twelve-month period.
Where a threat of permanent termination of parental rights exists, a trial court must appoint counsel for an indigent natural mother. D.B., 385 So.2d at 91. Here, the trial court correctly relied upon Florida Rule of Juvenile Procedure 8.320 and properly acknowledged that the combined effect of its actions resulting from the May 17, 1993 hearing provided a basis for appellant to file her termination petition. In order to comport with the notions of due process, the trial court should have advised appellant of her right to counsel or to have counsel appointed if indigent before conducting that hearing. As the trial court ultimately realized, the possibility of permanent termination of parental rights that underlies every dependency proceeding then evolved into a real threat. In dismissing appellant's petition, the trial court recognized that it would contravene long-standing principles of due process to allow appellant to take advantage of the aftermath of the constitutionally deficient hearings. Therefore, the trial court did not err when it refused to rely upon the results of the dependency proceeding and the related case plan as a basis for termination of appellee's parental rights.
Appellant alternatively contends the trial court erred in dismissing her petition because she alleged the existence of two other section 39.464 bases that are wholly independent of the constitutionally flawed dependency proceeding. See § 39.464(1)(c) and (d), Fla.Stat. We agree. Although the defects described above have tainted the petition's reliance upon the dependency proceeding, appellant's ability to petition for termination of appellee's parental rights is not otherwise impaired. The trial court should not have dismissed appellant's petition in its entirety.
Accordingly, we affirm the dismissal of the petition for termination of parental rights in that it relies upon the dependency proceeding and the associated case plan. We reverse the order of dismissal as it pertains to termination under section 39.464(1)(c) and (d) grounds, and we direct the trial court on remand to reinstate appellant's petition to that extent.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
POLEN, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I believe the majority has reached the correct result. The trial court properly relied upon rule 8.320, Florida Rules of Juvenile Procedure, which relates to Part II.B., Dependency Proceedings, of the above rules. The October 1992 hearing was conducted pursuant to rule 8.340, which is included in Part II.B.
However, the trial court improperly relied upon rule 8.410, Florida Rules of Juvenile Procedure, as that rule falls within Part II. C., Foster Care, which was not involved in the 1992 or 1993 hearings.
Frankly, I do not understand why rule 8.410(b)(3) does not also appear in Part II.B. for the reason given by Judge Cowart in his concurring opinion in White v. Department of Health & Rehabilitative Services, 483 So.2d 861 (Fla. 5th DCA 1986), which pointed out that parents should have the right to counsel when they enter into performance agreements. As he said: "Every lawyer knows that a client needs an attorney before executing an agreement and that after executing an agreement an attorney's assistance is greatly reduced. There is no need to appoint counsel at the gallows' foot." Id. at 866. Yet, the Florida Rules of Juvenile Procedure require such only under Part II.C., not II.B.
The May 1993 hearing could be considered as being held pursuant to rule 8.345, Florida Rules of Juvenile Procedure, to which rule 8.320 would apply, even though the trial court considered it as being conducted pursuant to section 39.41(1)(a)7.a., Florida Statutes (Supp.1992), which authorizes the trial court to:
7.a. Change the temporary legal custody or the conditions of protective supervision *864 at a postdisposition hearing subsequent to the initial detention hearing, without the necessity of another adjudicatory hearing. A child who has been placed in his own home under the protective supervision of an authorized agent of the department, in the home of a relative, or in some other place may be brought before the court by the agent of the department who is supervising the placement or by any other interested person, upon the filing of a petition which alleges a need for a change in the conditions of protective supervision or the placement. If the parents or other custodians deny the need for a change, the court shall hear all parties in person or by counsel, or both. Upon the admission of a need for a change or after such hearing, the court shall enter an order changing the placement, modifying the conditions of protective supervision, or continuing the conditions of protective supervision as ordered.
While that section makes no provision for advising the parent of her right to counsel, does it make sense not to require it pursuant to Florida Rules of Juvenile Procedure? How can there be a gap in due process? It is required throughout the adjudication of dependency and the establishment of the case plan at the front end and termination of parental rights at the back end.
NOTES
[1] The parties proceeded in this action under the 1994 version of the Florida Statutes.
[2] As stated in the report of the House of Representatives Committee on Aging and Human Services as revised by the Committee on Appropriations in analyzing the 1994 amendments to Chapter 39:

A parent's failure to comply with the terms and conditions of the agreement or plan can result in ... the initiation of proceedings to terminate parental rights. Thus, the performance agreement and permanent placement plan are considered the most critical documents in dependency proceedings because of their potential consequences on the life of a parent and child.