PER CURIAM.
C.L. appeals an order terminating her parental rights pursuant to section 39.464(l)(e), Florida Statutes (1993). The department alleged that C.L. failed to protect the minor child from abuse occasioned by the child’s father and that C.L. had not substantially complied with her performance agreement. We reverse and remand for further proceedings.
The record reflects that C.L. did not physically abuse the child. Rather, C.L. contacted the paramedics after observing the child’s swollen face and hearing him cry in an unusual manner. The child’s father, with whom C.L. lived, told her that their three month old baby may have had pink eye and that he accidentally dropped the baby. At the hospital the child was diagnosed with Shaken Baby Syndrome. The testifying doctor could not recall whether it was ascertained that the injuries resulted from more than one incident. The evidence at trial revealed that C.L. knew that the father had once been in prison and that she had heard that he was also in a “state hospital.” C.L. testified, and there was no evidence to the contrary, that the father was always nice to her and-the family. C.L. has two older children who are not the subject of this case. There was no evidence to indicate that C.L. had continued any relationship with .the father after this incident.
The child was declared dependent upon the department’s allegation that appellant failed to protect the child from the father’s harm. Following C.L.’s evaluation by a psychologist in connection with the dependency petition, C.L. was offered a performance agreement as required by section 39.451, Florida Statutes.[1]
The agreement required C.L. to follow all recommendations of the court psychologist; to enter into and successfully complete individual counseling and therapy to help her learn coping skills and better ways to deal with anger and her reactive tendencies. A representative of the department testified that C.L. refused to sign the case plan because she wanted to review it with her attorney. While noting that C.L.’s transportation problems prevented her from attending the subsequent court hearing associated with the plan, the department’s representative testi *826 fied that she did not seek to continue the hearing nor did she advise the trial, court about the reason for C.L.’s refusal to sign. The trial court approved the agreement. See § 39.452, Fla. Stat.
C.L. attended group counseling for six months. In May, 1994, the trial court ordered that the visits be monitored by a therapist and that a Master of Social Work be assigned to the ease. Neither occurred and until the final hearing the trial court was not advised of same. C.L. advised the department caseworker that she felt as if the group counseling was not productive, especially since the counselor was unable to testify regarding visitation. C.L. continued her efforts to comply with counseling by attending and completing successfully a program called “Amanda the Panda.” The caseworker considered this compliance to some extent, but not compliance with the requirement of individual counseling.
A successor caseworker then referred C.L. to individual counseling. Finding her “guarded” and denying any “anger” issues, the counselor thought it best that C.L. be referred to group counseling. C.L. did not pursue the recommended group counseling.
The department then filed its petition to terminate C.L.’s parental- rights. The department alleged that the child was adjudicated dependant, a “ease plan” was filed, and after the adjudication of dependency, appellant continued to abuse, neglect, or abandon the child by failing to comply with the case plan, by not attending counseling, and by not obtaining stable employment and housing..
After the petition was filed, the trial court ordered that C.L. undergo a second psychological evaluation by the court psychologist. The second psychologist recommended individual psychotherapy with a licensed clinician to focus on the “possible maladaptive effects that her personality style ‘would have’ on the minor child.” The psychologist testified as follows about C.L.’s personality:
[S]he is at times over reactive to things that happen around her. That she has the potential to be volatile. That she has difficulty controlling her emotions. That she sometimes behaves impulsively in a manner that— that may.be illogical or ineffective. that she tends to notice fleeting aspects of situations and therefore forms very overly general or impressionistic perceptions. That she attempts to deny unpleasant thoughts and feelings. That she enjoys social interaction, and in fact enjoys being the center of attention. That she can — she can be somewhat manipulative in interpersonal relationships, and that she maintains mostly shallow, superficial relationships, as opposed to more deeper relationships.
In its termination order the trial court noted that the ease was troubling because “in all likelihood” C.L. was not the initial perpetrator of the physical abuse to the minor child. While recognizing C.L.s transportation problems, the trial court was also greatly concerned with C.L.’s failure to attend the child’s medical appointments. The trial court questioned whether C.L. would be able to care for the child’s physical needs if in her custody. The foster mother testified that the child, then 4 years old, has some speech delays, stutters, is hyperactive and when upset or excited, his legs tremble.[2] The trial court terminated C.L.’s parental rights, noting that she failed to comply substantially with the plan’s tasks, the department’s more than reasonable efforts to assist her, and the manifest best interest of the child.
We see nothing in the plan/agreement that required C.L. to attend medical visits, which was the express responsibility of the caretaker. The record contains abundant references to C.L.’s transportation problems and her extensive visits with the child despite same. Section 39.4031, Florida Statutes (1995), addresses case plan requirements and provides that the plan should describe the problem being addressed that includes the behavior or act of a parent resulting in risk to the child and the reason for the department’s intervention. See also § 39.451, Fla. Stat. (1993). The plan should then describe the services to be provided to the family and the child specifically addressing the identified problem.
*827 This court has previously recognized the importance of this stage of the proceedings because the failure to comply substantially with the plan often forms the basis for a termination petition. See e.g. Wofford v. Eid, 671 So.2d 859 (Fla. 4th DCA 1996); see also In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983)(meaningful performance agreement between the parent and HRS has become central to the strategy for securing each child a permanent home with his legally recognized parent). The instant plan/agreement did not comport with section 89.4031, Florida Statutes (1995), or with section 39.451(3)(d)(1993).
There appears to be no dispute that C.L. advised the department that she would not sign the plan without consulting with her appointed counsel. While aware of same and without bringing such information to the trial court’s attention, the department attended a court hearing after which the trial court entered an order adopting the plan. Neither the plan nor the psychologist’s report upon which it is based meets the goals of addressing the behavior or act of C.L. that resulted in risk to the child and the reason for the department’s intervention.
The record supports C.L.’s argument that the department and the various facilities worked with her on “personal goals” not goals tied to the behavior or act that resulted in the risk to the child. We note that one of the caseworkers testified that her referral of C.L. to the counselor was not specific. The department’s plan failed to focus on efforts to reunite the family and failed to focus on the behavior of C.L. that resulted in risk to the minor child. Such efforts were not reasonable in light of the underlying reason why the child was removed from C.L.’s care and declared dependent.
We therefore reverse the order terminating parental rights. We remand this case and direct the trial court to proceed in accordance with section 39.469(l)(a), Florida Statutes, and if the trial court determines that continued dependency is necessary, with a case plan that addresses C.L.’s behavior or act that resulted in the risk to the child and the reason for the department’s intervention. A new plan may address any basis for continued dependency. We recognize that the grounds for continuing dependency, if any, may be different from those which required the dependency adjudication some time earlier. In the Interest of A.B., 444 So.2d at 981 (Fla. 1st DCA 1983).
REVERSED and REMANDED.
DELL, GROSS and TAYLOR, JJ., concur.

. A performance agreement is now called a "case plan.” See § 39.4031, Fla. Stat. (1995).

. There was no testimony about the type of treatment or therapy necessary for his care.